Wayne DALLENBACH, Appellee,

v.

MAPCO GAS PRODUCTS,
INC., Appellant.

No. 88–1734.

Supreme Court of Iowa.

July 18, 1990.
Rehearing Denied Sept. 19, 1990.

W. Michael Shinkle and Ted Breckenfelder, Davenport, for appellant.

Tom Hyland of Hyland, Laden & Pearson, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN and SNELL, JJ.

McGIVERIN, Chief Justice.

Plaintiff Wayne Dallenbach worked for defendant MAPCO Gas Products, Inc., (MAPCO Gas) or its predecessors from 1952 until June 1986. In November 1986, Dallenbach brought this law action against MAPCO Gas, alleging that it had breached its employment contract with him by reducing his 1985 bonus. The amended petition also alleged that the bonus reduction was in violation of the Iowa Wage Payment Collection Law, Iowa Code chapter 91A (1985). MAPCO Gas denied any liability to Dallenbach and also denied that chapter 91A applied to the dispute.

The case was tried to the district court without a jury. The court ruled that MAPCO Gas had breached its contract with Dallenbach by refusing to pay him the full amount of his 1985 bonus. Moreover, the court ruled that chapter 91A applied. Dallenbach was awarded the portion of his 1985 bonus that had been wrongfully withheld, as well as court costs, attorney's fees, and liquidated damages as allowed in certain chapter 91A cases. *See* Iowa Code § 91A.8.

MAPCO Gas appealed. We transferred the case to the court of appeals. That court affirmed the judgment of the district court.

MAPCO Gas applied for further review, which we granted. We affirm in part, reverse in part, and remand the case for entry of a new judgment.

Our review in this law action is for correction of errors at law. Iowa R.App.P. 4. The district court's findings of fact are binding on appeal if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

I. *Background facts and proceedings.* Wayne Dallenbach went to work for Thermogas of Cedar Rapids as a delivery truck driver in 1952. He was transferred to Thermogas of Des Moines in 1962.

In 1966, the various Thermogas entities became affiliated with MAPCO, Inc. Thermogas of Des Moines was brought under the corporate organization of MAPCO Gas (an affiliate of Mapco, Inc.), but continued to do business as Thermogas of Des Moines. Dallenbach's employment was unaltered.

In 1969, Dallenbach became Des Moines district manager for MAPCO Gas. MAPCO Gas promised Dallenbach that his compensation would include a monthly base salary and certain benefits, plus an annual "bonus" of 10% of his district's "bonus income." "Bonus income" was the district's net operating profit with certain adjustments, most notably a downward adjustment of 6% of the district's "adjusted average annual assets." Under this arrangement, the bonus for a given calendar year was to be calculated after the calendar year and paid the first part of the following year, generally in February following the district managers meeting held each January.

For the years 1969 to 1977, Dallenbach's annual bonus for the Des Moines district was calculated and paid as just outlined.

In July 1978, the bonus formula was changed from allowing a bonus of 10% of the bonus income to allowing a bonus of 7% of the first $100,000 bonus income, 10% of any excess bonus income, and 5% of the district's "associate dealer and industrial account" profits (the 1978 formula). This change was announced in mid-year but was made effective only prospectively. The

1978 bonus was calculated accordingly and paid as previously outlined.

For the years 1979 to 1984, Dallenbach's annual bonus was calculated by the 1978 formula and paid as previously outlined.

In early 1985, MAPCO Gas learned that its district managers were being paid considerably more than comparable employees of its competitors. The MAPCO Gas bonus plan was especially generous. In April 1985, the bonus formula was changed by increasing the "adjusted average annual asset" deduction from 6% to 10% of the district's adjusted average annual assets (the 1985 formula). This change was made effective for 1985 bonuses and, therefore, retroactively affected the bonus attributable to Des Moines district operations during the first three months of 1985. The evidence conflicted concerning whether this change in the bonus formula for 1985 was discussed at the January 1985 district managers meeting. Dallenbach is not complaining about this change.

There was no other change in the bonus formula during 1985. Dallenbach worked for MAPCO Gas throughout 1985, and that year the Des Moines district had bonus income under the 1985 formula of $236,555.35. The parties agree that under the 1985 formula, Dallenbach's 1985 bonus would be $20,655.35.

On January 10, 1986, a memorandum went out from D.H. Rinke to all district managers. Rinke was a vice president of MAPCO Gas. The memorandum stated that beginning with the start of 1986, MAPCO Gas would be implementing a plan designed to reduce the amount of salary and bonuses it paid its district managers and so bring MAPCO Gas in line with its competitors. The memorandum specifically stated that the "changes mentioned [would] not affect the 1985 bonus...."

The annual MAPCO Gas district managers meeting was held on January 21, 1986. Dallenbach was present. As Rinke was explaining the changes in the bonus formula for 1986, he was interrupted by a member of higher management who informed him and the audience that, in fact, the *1985* bonuses also were going to be reduced to bring them more in line with the industry average. This was the first notice to Dallenbach that his 1985 bonus would not be calculated by the 1985 formula. The evidence conflicted concerning whether he and the other district managers immediately protested the unilateral reduction in their 1985 bonuses.

Dallenbach received his 1985 bonus check the last week in February 1986. It reflected a straight 31% reduction of the bonus as calculated by the 1985 formula, a reduction amounting to $6,403.12. Dallenbach deposited the bonus check.

Dallenbach tendered his resignation in March 1986, effective June 30. He filed this action in November.

Throughout this litigation the parties have agreed that Dallenbach was employed by MAPCO Gas at will, and that his salary and bonus were the subject of an oral agreement between them. The content of the agreement as to the annual bonus is disputed.

Dallenbach's evidence tended to show that he and MAPCO Gas agreed that he would be paid an annual bonus for each year, calculated by a formula announced at the district managers meeting held each year in January. The bonus was to be paid in February of the following year. Any changes in the bonus formula were to be made prospectively. According to Dallenbach, his contractual right to an annual bonus depended solely on the profit made by the Des Moines district and the predetermined formula; MAPCO Gas had no discretion to reduce or refuse to pay his bonus after it was earned by him.

MAPCO Gas's evidence tended to show that the payment of Dallenbach's annual bonus was entirely in the discretion of MAPCO Gas and that the formula could be changed by it at any time, prospectively or retroactively. According to MAPCO Gas, it was under no contractual obligation to pay Dallenbach a bonus calculated pursuant to the 1985 formula. Rather, Dallenbach was only entitled to the 1985 bonus he was actually paid in February 1986.

The district court heard all of the evidence concerning the oral agreement between MAPCO Gas and Dallenbach and found that MAPCO Gas was contractually obligated to pay Dallenbach a 1985 bonus calculated pursuant to the 1985 formula. The court also found that the payment of the bonus was not discretionary for MAPCO Gas.

Based on its findings, the court ruled that MAPCO Gas's unilateral 31% reduction in Dallenbach's 1985 bonus was a breach of contract. In addition, the court concluded that MAPCO Gas's actions subjected it to liability not only for the unpaid portion of the bonus, but also for liquidated damages, court costs, and attorney's fees. Judgment was entered accordingly.

On appeal, the court of appeals affirmed the judgment of the district court. The court of appeals was equally divided, however, over whether chapter 91A was properly applied to this case.

We granted MAPCO Gas's application for further review to consider: 1) whether the district court erred by ruling that MAPCO Gas breached an employment contract with Dallenbach by refusing to pay him a 1985 bonus calculated by the 1985 bonus formula; and 2) whether the district court erred by applying Iowa Code chapter 91A to this case.

■ II. *The breach of contract issue.* Whether an oral contract existed, what its terms were, and whether it was breached ordinarily are questions for the trier of fact. *See, e.g., Peoples State Savings Bank of Baxter v. Cross,* 197 Iowa 750, 754–55, 198 N.W. 70, 71–72 (1924); *Howard v. Dickinson,* 167 Iowa 157, 160, 149 N.W. 69, 70 (1914).

■ The district court found that MAPCO Gas was contractually obligated to pay Dallenbach a 1985 bonus calculated pursuant to the 1985 formula, and also found that MAPCO Gas breached the contract by refusing to pay that bonus. These findings are supported by substantial, though not uncontradicted, record evidence. The district court was within its discretion in resolving the conflicts in the evidence in favor of Dallenbach.

MAPCO Gas attempts to upset the district court's findings by relying on· *Drake v. Block,* 247 Iowa 517, 74 N.W.2d 577 (1956). In *Drake,* the plaintiffs were former at will employees of the defendant. *Id.* at 519–21, 74 N.W.2d at 579–80. The employment had been based on an oral contract. *Id.* at 520, 74 N.W.2d at 579. When the plaintiffs were fired, they sued for salary, vacation pay, and bonuses allegedly owed them. *Id.* at 519, 74 N.W.2d at 579. In reversing a jury verdict for the plaintiffs on the bonus question, this court wrote:

> There is no question under this record but that a bonus or profit sharing plan was discussed by the parties and contemplated by both. *However, all parties are agreed that at no time was any definite amount agreed upon. It appears without dispute that all matters concerning this bonus, time of payment and the amount thereof rested solely and exclusively with [the defendant.]* He states that he had no fixed plan or schedule to be followed in determining the amount. The record clearly shows such bonuses, as were paid, followed no set plan or percentage of salary paid. Under the well-recognized rules of law here applicable, any attempt to recover a bonus under an express contract must fail as too indefinite and uncertain.

*Id.* at 521, 74 N.W.2d at 580 (citations omitted) (emphasis added).

Dallenbach's case is not like *Drake* because in this case there is ample evidence from which the trier of fact could find that Dallenbach was contractually entitled to a bonus calculated by a set formula and due at a certain time. In this respect his case is like *Hilgenberg v. Iowa Beef Packers, Inc.,* 175 N.W.2d 353 (Iowa 1970), an action by former employees of the defendant for nonpayment of bonuses, in which this court upheld a jury verdict for the plaintiffs and distinguished *Drake.* We stated:

> The case before us is clearly distinguishable from the *Drake* case. In *Drake* the contract of employment was

unilateral and there was no evidence from which any bonuses due plaintiffs might be computed. In the case before us there was evidence of a promise to pay a bonus as an inducement to accept different work and a different method and rate of payment. Plaintiffs accepted and performed accordingly. There was evidence (uncontradicted) that the bonus would be compensatory for the change. There was evidence that [the defendant] had allocated $14,175 for the payment of these bonuses.

*Id.* at 356. Dallenbach accepted the job of district manager because MAPCO Gas promised him that he would receive a monthly salary, benefits, and an annual bonus calculated on a certain formula. Dallenbach performed his end of the bargain for 1985. He is just like the plaintiffs in *Hilgenberg.*

■ MAPCO Gas also asserts that regardless of the terms of the oral contract as to the 1985 bonus prior to February 1986, Dallenbach continued to work for MAPCO Gas after depositing the reduced bonus check and so should be deemed to have accepted the "modification" in his employment contract. As MAPCO Gas notes, the traditional rule is that "an employment contract terminable at will is subject to modification at any time by either party as a condition of its continuance." *Moody v. Bogue,* 310 N.W.2d 655, 660–61 (Iowa App. 1981); *see also Janda v. Iowa Indus. Hydraulics, Inc.,* 326 N.W.2d 339, 341 (Iowa 1982). In such a case, an employee's decision to continue work after an announced change in the terms of employment is an acceptance of the new terms as a matter of law. *Moody,* 310 N.W.2d at 661; *Janda,* 326 N.W.2d at 341. The employee may accept the new terms of employment or quit. *Moody,* 310 N.W.2d at 661; *Janda,* 326 N.W.2d at 341. Dallenbach does not dispute that these traditional rules of employment at will will apply to the retroactive change in the 1985 bonus formula attempted in this case.

Even under the interpretation of the employment at will doctrine urged here, we do not believe that Dallenbach accepted the change in his 1985 bonus; rather, he quit and stood on his rights under the bargain previously struck with MAPCO Gas. There was evidence that Dallenbach protested the reduction in his 1985 bonus immediately after learning of it at the January 1986 meeting. MAPCO Gas was almost certainly on notice that its district managers—including Dallenbach—considered the bonus reductions to be a breach of contract. Dallenbach tendered his resignation in March, less than a month after receiving the reduced bonus check, although he continued to work until the resignation became effective in June. We cannot say as a matter of law that in the context of this thirty-four year employment relationship, Dallenbach's actions amounted to acceptance of MAPCO Gas's unilateral reduction of the 1985 bonus.

The district court did not err by finding that MAPCO Gas breached its contract with Dallenbach by unilaterally reducing his 1985 bonus by 31%.

III. *Application of the Iowa Wage Payment Collection Law.* In addition to breach of contract, Dallenbach's amended petition alleged that MAPCO Gas's refusal to pay him the full amount of his 1985 bonus was an intentional violation of the Iowa Wage Payment Collection Law, Iowa Code chapter 91A. The district court agreed and awarded Dallenbach liquidated damages, court costs and attorney's fees in addition to the part of his 1985 bonus that MAPCO Gas had refused to pay him. The court of appeals affirmed on this issue by an equally divided vote.

■ Iowa Code section 91A.2(4) defines "wages" as the term is used in chapter 91A:

4. *"Wages"* means compensation owed by an employer for:

*a.* Labor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation.

*b.* Vacation, holiday, sick leave, and severance payments which are due an employee under an agreement with the employer or under a policy of the employer.

*c.* Any payments to the employee or to a fund for the benefit of the employee, including but not limited to payments for medical, health, hospital, welfare, pension, or profit-sharing, which are due an employee under an agreement with the employer or under a policy of the employer. The assets of an employee in a fund for the benefit of the employee, whether such assets were originally paid into the fund by an employer or employee, are not wages.

*d.* Expenses incurred and recoverable under a health benefit plan as defined in and as provided in chapter 91B.

Under the plain language of subsection (a) of this statute, Dallenbach's annual bonus is wages. The bonus clearly was part of the compensation owed him for his labor or services, and its method of determination falls within the definition as an "other basis of calculation." The bonus was not a gift; MAPCO Gas was contractually bound to pay it. We need not resort to rules of statutory construction to answer this question. Dallenbach's annual bonus is wages under chapter 91A. *Cf. Rohr v. Ted Neiters Motor Co.,* 758 P.2d 186, 187–88 (Colo. App.1988) (contracted for "bonus" is "wages" under Colorado statutory definition very similar to Iowa Code section 91A.2(4)); *Neal v. Idaho Forest Indus., Inc.,* 107 Idaho 681, 683, 691 P.2d 1296, 1298 (App.1984) (same under Idaho statutory definition of "wages"); *SCOA Indus., Inc. v. Bracken,* 374 A.2d 263, 264 (Del. 1977) (same under Delaware statutory definition of "wages").

■ MAPCO Gas contends that the conclusion that Dallenbach's annual bonus is wages under chapter 91A cannot be correct because to be wages, the bonus would have to be paid at least monthly. This contention is based on Iowa Code section 91A.3(1), which provides:

An employer shall pay all wages due its employees, less any lawful deductions specified in section 91A.5, at least in monthly, semimonthly, or biweekly installments on regular paydays which are at consistent intervals from each other and which are designated in advance by the employer. However, if any of these wages due its employees are determined on a commission basis, the employer may, upon agreement with the employee, pay only a credit against such wages. If such credit is paid, the employer shall, at regular intervals, pay any difference between a credit paid against wages determined on a commission basis and such wages actually earned on a commission basis. These regular intervals shall not be separated by more than twelve months. A regular payday shall not be more than twelve days, excluding Sundays and legal holidays, after the end of the period in which the wages were earned. An employer and employee may, upon written agreement which shall be maintained as a record, vary the provisions of this subsection.

We think MAPCO Gas misreads this statute. The periodic payment requirement of section 91A.3(1) does not modify the section 91A.2(4) definition of "wages." In turn, just because a given bonus is wages under section 91A.2(4) does not mean that it must be paid at least monthly; only *wages due* need be paid at least monthly. *See* Iowa Code § 91A.3(1). Under Dallenbach's contract with MAPCO Gas, no bonus was owed unless the Des Moines district made a profit for the year, and even then the bonus was not due until February of the following year. The question of whether Dallenbach's bonus is wages under section 91A.2(4) is separate from the question of whether section 91A.3(1) was violated by paying the bonus only once a year, or by refusing to pay the full amount of the bonus when it became due.

■ The district court ruled that by refusing to pay Dallenbach the full amount of his 1985 bonus, MAPCO Gas had intentionally failed to pay Dallenbach part of the wages due him. The court awarded Dallenbach the unpaid portion of his 1985 bonus, liquidated damages, court costs and attorney's fees under Iowa Code section 91A.8. That statute provides:

When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses

pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Code § 91A.8; *see also* Iowa Code § 91A.2(6) (defining "liquidated damages"). As we read section 91A.8, intentional violation of section 91A.3 subjects an employer to liability for unpaid wages or expenses, liquidated damages, court costs, and attorney's fees. Any other failure to pay an employee wages or reimburse expenses subjects an employer to liability for unpaid wages or expenses, court costs, and attorney's fees.

Subsection (1) is the only subsection of Iowa Code section 91A.3 which is even argued to have been violated in this case. That subsection, quoted above, generally requires that an employer "pay all *wages due* its employees ... at least in monthly, semimonthly, or biweekly installments...." (Emphasis added.) A limited exception is made for wages determined on a commission basis, which may be paid by paying "credit[s] against such wages" in at least monthly installments, with final settlement to be made at least annually. In addition, an employer and employee may vary the provisions of section 91A.3(1) by written agreement.

There is no written agreement varying the provisions of section 91A.3(1) in this case. Dallenbach's bonus is not within the common understanding of a "commission" because it depends on the overall profit of the Des Moines district, not just revenue generated by Dallenbach. Finally, it would make little sense to say that an annual bonus is "wages due" and must be paid in at least monthly installments, when the bonus cannot even be accurately estimated until the year's operations are nearly complete. The parties agree that Dallenbach's 1985 bonus was not due until February 1986.

We conclude that Iowa Code section 91A.3 was not violated in this case. Because section 91A.3 was not violated, this case falls under the "other instances" language of the second sentence of section 91A.8. *See* Iowa Code § 91A.8. Liquidated damages are not available in such a case. *Id.* The case must be remanded for entry of a new judgment awarding Dallenbach his unpaid wages, court costs, and attorney's fees but no liquidated damages.

IV. *Disposition.* The judgment of the district court and the decision of the court of appeals are affirmed in part and reversed in part. The case is remanded for entry of a new judgment consistent with this opinion.

Costs shall be taxed two-thirds to MAPCO Gas and one-third to Dallenbach.

DECISION OF THE COURT OF APPEALS AND JUDGMENT OF THE DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.