# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3480
No. 10-1507

_____

| | | |
|---|---|---|
| Daniel J. Kaufmann, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Siemens Medical Solutions USA, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 15, 2011
Filed: April 14, 2011

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Daniel Kaufmann appeals the district court's[1] grant of summary judgment to Siemens Medical Solutions ("Siemens") on his claim for unpaid wages for fiscal year 2003 under the Iowa Wage Payment Collection Law ("IWPCL") and the district court's grant of judgment as a matter of law to Siemens on his claim for liquidated

_____

[1] The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

damages based on unpaid wages for fiscal year 2004 under the IWPCL, Iowa Code § 91A.  For the reasons that follow, we affirm.

## I.    BACKGROUND

Kaufmann has worked in various sales-related capacities for Siemens since 2000.  During fiscal year 2004 (October 1, 2003, to September 30, 2004), Kaufmann worked as the national sales director for Siemens's Specialty Markets and Alternate Channels division.  In this position, Kaufmann supervised a sales force from Millennium Solutions ("Millennium"), a company with which Siemens contracted to be its exclusive dealer of Siemens ultrasound equipment in the United States.  In this capacity, Kaufmann was tasked with supervising and training the Millennium sales force.  Kaufmann played no role in supervising or training any member of Siemens's direct sales force.  Although Siemens mandated its direct sales force to "defer and refer" sales leads to the Millennium sales force, they were not cooperative and continued to sell Siemens ultrasound equipment in Millennium's territory.

Kaufmann's compensation for fiscal year 2004 was governed by Siemens's Sales Compensation Plan Component Summary and the 2004 Sales Variable Pay Plan (collectively, "Pay Plan").  The Pay Plan entitled Kaufmann to variable pay based on four metrics, including commissions based on sales.  Pursuant to the Pay Plan, commissions were to be paid monthly.  Commissions were only "credited or payable to the participant . . . assigned to the territory within which the sale occurred." Likewise, "[i]t is necessary, to be entitled to commission, that the participant be personally and directly responsible, and have been assigned such responsibility, for such sales."  Because Kaufmann was not directly responsible for sales made by Siemens's direct sales force—and consequently would not be entitled to commissions for those sales—Kaufmann viewed the direct sales force's practice of selling Siemens ultrasound equipment in Millennium's territory as "poaching" sales from the

Millennium sales force which, in turn, reduced the amount of Kaufmann's commission.

Kaufmann testified that he asked Sam Patton, a vice president at Siemens, for additional compensation based on the sales by Siemens's direct sales force in Millennium's territory. Kaufmann testified, and produced evidence in the form of an e-mail from Patton, that Patton agreed to compensate him for these sales. Ultimately, however, Siemens reversed Patton's decision and did not compensate Kaufmann for the sales made by the direct sales force in Millennium's territory. Nonetheless, Siemens did give Kaufmann credit for attaining his sales targets for fiscal year 2004, which he had not met, based on sales by the Millennium sales force. However, Kaufmann still failed to qualify for various sales incentives awarded by Siemens during fiscal year 2004.

Kaufmann filed his complaint against Siemens on September 7, 2006, in Iowa state court, seeking recovery of unpaid wages for fiscal years 2003, 2004, and 2005. Siemens removed the action to federal district court and, soon after, moved for summary judgment on all of Kaufmann's claims. The district court granted Siemens's motion as to Kaufmann's wage claim for fiscal year 2003 because the claim was barred by Iowa's two-year statute of limitations for wage claims. The district court also granted Siemens's motion as to Kaufmann's claim for unpaid sales incentives for fiscal year 2004.[2]

A jury trial was held on the remaining wage claims for fiscal years 2004 and 2005. At the close of the evidence, Siemens moved for judgment as a matter of law on both claims. The district court denied this motion. The jury returned a verdict for Kaufmann on the fiscal year 2004 wage claim in the amount of $125,819 and a verdict

---

[2] Kaufmann does not appeal this decision.

for Siemens on the fiscal year 2005 wage claim. The jury also found that Siemens intentionally withheld Kaufmann's wages for fiscal year 2004, potentially subjecting Siemens to liability for liquidated damages under the IWPCL.

Pursuant to Fed. R. Civ. P. 50(b), Siemens renewed its motion for judgment as a matter of law on the fiscal year 2004 claim. The district court denied the motion as to the wage claim but granted the motion as to the liquidated damages claim. Kaufmann appeals the district court's grant of summary judgment with respect to his wage claim for fiscal year 2003 and the district court's grant of judgment as a matter of law on his liquidated damages claim based on his wage claim for fiscal year 2004.

## II.   DISCUSSION

### A.   Fiscal Year 2003

Kaufmann first challenges the district court's grant of summary judgment to Siemens on his claim for unpaid wages for fiscal year 2003. We review the district court's grant of summary judgment *de novo*. *Taylor v. St. Louis Cnty. Bd. of Election Comm'rs*, 625 F.3d 1025, 1026 (8th Cir. 2010) (per curiam). Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Our subject matter jurisdiction in this case is based upon diversity of citizenship, and the parties agree that Iowa law governs our analysis. *See Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 499 (8th Cir. 2010).

A two-year limitations period applies to wage-claim actions under the IWPCL. *See* Iowa Code § 614.1(8). "The two-year statute of limitations for wages commences as each payment comes due." *Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 482 (Iowa

1997). "Thus, an employee may recover only so many payments as are within two years of when the petition is filed." *Id.*

Siemens's 2003 fiscal year ended on September 30, 2003. According to the Pay Plan, Commission payments were due to be paid by the last day of the following quarter, December 31, 2003. Therefore, the limitations period for wage claims from Siemens's fiscal year 2003 ended on December 31, 2005. Kaufmann filed his complaint on September 7, 2006. The district court held that Kaufmann's claim fell outside of the two-year limitations period: "Kaufmann says he was promised compensation for the [fiscal year 2003] sales as early as February 2003, he did not receive the compensation, he knew at December 31, 2003 that he had not received the compensation, and his commission payments were due by that date."

Kaufmann argues, however, that we should apply principles of equitable estoppel to toll the limitations period because Siemens allegedly has a practice of revising payments to its employees beyond the date when payment is due. According to Kaufmann, an "inference [can] be drawn from this knowledge . . . that no wage paid by Siemens is ever final" and, therefore, equitable estoppel should apply to toll the limitations period indefinitely.

Under Iowa law, "a party who has fraudulently prevented the other party from seeking redress within the limitations period cannot benefit from the statute of limitations." *Boehme v. Fareway Stores, Inc.*, 762 N.W.2d 142, 146 (Iowa 2009). "A party asserting equitable estoppel must demonstrate the following by clear and convincing evidence: '(1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely on such representations to his prejudice.'" *Id.* at 146-47 (quoting *Hook v. Lippolt*, 755 N.W.2d 514, 525 (Iowa 2008)).

We find that Kaufmann's equitable estoppel argument fails on the first requirement of the test detailed in *Boehme*. "To establish false representation or concealment, there must be evidence the party acted 'with the intent to mislead the injured party.'" *Id.* at 147 (quoting *Hook*, 755 N.W.2d at 525). Even if we were to credit Kaufmann's assertion that Siemens revised payments to employees after the payment deadline, Kaufmann produced no evidence that such a practice was done "with the intent to mislead" him. Accordingly, because Kaufmann has failed to meet the first prerequisite to applying equitable estoppel, we need not proceed further, and we affirm the district court's grant of summary judgment to Siemens on Kaufmann's wage claims for fiscal year 2003.

## B.    Fiscal Year 2004

Kaufmann next appeals the district court's grant of Siemens's Fed. R. Civ. P. 50(b) motion for judgment as a matter of law on his claim for liquidated damages under the IWPCL based on unpaid wages for fiscal year 2004 that the jury determined Siemens intentionally withheld. We review the district court's grant of judgment as a matter of law *de novo*. *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 863 (8th Cir. 2010). "Judgment as a matter of law is only appropriate when no reasonable jury could have found for the nonmoving party." *Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 860 (8th Cir. 2002). In deciding whether to affirm the grant of judgment as a matter of law, "we consider all evidence in the record without weighing credibility, and resolve conflicts and make all reasonable inferences in favor of the non-moving party." *Schooley v. Orkin Extermination Co., Inc.*, 502 F.3d 759, 764 (8th Cir. 2007).

The IWPCL is "remedial" in nature and "is meant to facilitate the public policy of allowing employees to collect wages owed to them by their employers." *Hornby v. State*, 559 N.W.2d 23, 26 (Iowa 1997). The term "wages" in section 91A.2(7)(a) includes commissions and bonuses for labor or services rendered by an employee. Accordingly, an employee may bring an IWPCL wage claim for unpaid commissions

-6-

and unpaid bonuses.  *Dallenbach v. MAPCO Gas Prods., Inc.*, 459 N.W.2d 483, 488 (Iowa 1990).

Furthermore, pursuant to the IWPCL, "[w]hen it has been shown that an employer has *intentionally* failed to pay an employee *wages . . . pursuant to section 91A.3*, . . . the employer shall be liable to the employee for any wages . . . that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary." *See* § 91A.8 (emphasis added).  "In *other instances* the employer shall be liable only for unpaid wages[,] . . . court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages." *Id.* (emphasis added).  Thus, under the IWPCL, liquidated damages are available only for an employer's intentional failure to pay wages "pursuant to section 91A.3."[3]

Section 91A.3 provides that "[a]n employer shall pay all wages due its employees . . . at least in monthly, semimonthly, or biweekly installments on regular paydays."  According to the Supreme Court of Iowa, "[t]he periodic payment requirement of section 91A.3(1) does not modify the section 91A.2([7]) definition of 'wages.'" *Dallenbach*, 459 N.W.2d at 488.  "In turn, just because a given bonus is wages under section 91A.2([7]) does not mean that it must be paid at least monthly; only *wages due* need be paid at least monthly." *Id.*  Therefore, "[t]he question of whether [a] bonus is wages under section 91A.2([7]) is separate from the question of whether section 91A.3(1) was violated." *Id.*

---

[3] Liquidated damages are calculated using the following formula: "the sum of five percent multiplied by the amount of any wages that were not paid or of any authorized expenses that were not reimbursed on a regular payday or on another day pursuant to section 91A.3 multiplied by the total number of days, excluding Sundays, legal holidays, and the first seven days after the regular payday on which wages were not paid or expenses were not reimbursed.  However, such sum shall not exceed the amount of the unpaid wages." Iowa Code § 91A.2(6).

In *Dallenbach*, the court concluded that Dallenbach's claim for an intentionally withheld annual bonus met the definition of "wages" in section 91A.2(7). However, because "it would make little sense to say that an annual bonus is 'wages due' and must be paid in at least monthly installments," *id.* at 489, the court held that Dallenbach's employer did not "intentionally fail[] to pay an employee wages . . . pursuant to section 91A.3," *see* § 91A.8. As such, Dallenbach's claim fell within the "other instances" provision of section 91A.8 and, therefore, he could not recover liquidated damages as a matter of law. *Dallenbach*, 459 N.W.2d at 489.

The court's decision in *Dallenbach*—that an employee is not entitled to liquidated damages for an employer's intentional failure to pay a bonus—was reaffirmed in *Runyon v. Kubota Tractor Corp.* 653 N.W.2d 582, 588 (Iowa 2002). In *Runyon*, the court reiterated that "the [Iowa] legislature intended to reserve the liquidated damages provision of section 91A.8 for situations involving the intentional withholding of regular paychecks and commissions, rather than for disputes over the calculation of discretionary bonuses." *Id.* The court went on to reassert that "section 91A.8 limits the recovery of liquidated damages to unpaid wages as defined by section 91A.3, that is, 'wages due . . . in monthly, semimonthly, or biweekly installments on regular paydays.' A bonus . . . does not commonly fit that definition." *Id.* (internal citations omitted). Federal district courts applying Iowa law have extended this reasoning to foreclose the availability of liquidated damages based on wage claims for unpaid severance pay and unused vacation time. *See Hinshaw v. Ligon Indus., L.L.C.*, 551 F. Supp. 2d 798, 818 (N.D. Iowa 2008) (liquidated damages unavailable in a claim for unpaid severance pay); *Canterbury v. Federal-Mogul Ignition Co.*, 418 F. Supp. 2d 1112, 1119 (S.D. Iowa 2006) (liquidated damages unavailable in a claim for unused vacation time).

Before the district court, Siemens argued that Kaufmann's fiscal year 2004 wage claim was for compensation more akin to a bonus than regular, monthly commissions under the IWPCL. This was true, Siemens argued, because Kaufmann was not actually entitled to commissions based on sales by the direct sales force

within Millennium's territory under the Pay Plan. The district court agreed, holding that Patton's agreement with Kaufmann to compensate him for "poached" sales by the direct sales force "was a discretionary accommodation to Mr. Kaufmann," and, thus, his wage claim was more akin to a claim for an unpaid bonus, rather than regular commissions.

Kaufmann challenges the district court's conclusion by first arguing that the question of whether he is entitled to liquidated damages is a question of fact that the jury decided in his favor when it answered affirmatively the question of whether "Kaufmann proved Siemens intentionally failed to pay commissions." We find Kaufmann's argument unavailing. While the question of intent is a question of fact properly left to the jury, the question of whether Kaufmann's claim satisfies the statutory requirements for liquidated damages involves interpreting the IWPCL and the Pay Plan. A question of statutory interpretation is always a question of law, *State v. Heard*, 636 N.W.2d 227, 229 (Iowa 2001), *superseded by statute on other grounds*, 2002 Iowa Acts, ch. 1094, § 1, as are questions of contract interpretation, *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 179 (Iowa 2010). Therefore, while the jury resolved the factual dispute over whether Siemens *intentionally* withheld Kaufmann's compensation, the jury did not answer—nor should it have answered—the legal question of whether Kaufmann's wage claim satisfied section 91A.3 and section 91A.8 of the IWPCL. *See Runyon*, 653 N.W.2d at 587-88 (holding that the state district court did not err "when it refused to . . . submit a jury instruction[] on the question of [Runyon's] entitlement to liquidated damages" because Runyon's claim involved "the intentional withholding of regular paychecks and commissions, rather than [a] dispute[] over the calculation of discretionary bonuses payable at year-end").

Kaufmann next contests the district court's ultimate determination that he is not entitled to liquidated damages. To show that Siemens intentionally failed to pay him "wages . . . pursuant to section 91A.3," Kaufmann must demonstrate that he was owed commissions for sales of ultrasound equipment by Siemens's direct sales force under

the Pay Plan and that those commissions were to be paid in at-least-monthly intervals on regular paydays.

We have found nothing in the Pay Plan that mandates Siemens to pay Kaufmann commissions for, as he argues, "sales within the [Millennium] territory, regardless of who made the sale." To the contrary, the Pay Plan includes the following caveat: "Commission is credited or payable to the participant who is assigned to the territory within which the sale occurred. It is necessary, to be entitled to commission, that the participant be *personally and directly responsible, and have been assigned such responsibility, for such sales*" (emphasis added). Kaufmann was neither "personally and directly responsible" nor had he been "assigned such responsibility" for sales by Siemens's direct sales force during fiscal year 2004. In fact, Kaufmann's counsel candidly admitted at oral argument that Kaufmann had no responsibility for Siemens's direct sales force. At its core, Kaufmann's wage claim is based on an accommodation made by Patton, on behalf of Siemens, to compensate him for sales "poached" from the Millennium sales force by Siemens's direct sales force, and not on any provision of the Pay Plan entitling Kaufmann to commissions. This payment—intended to accommodate Kaufmann and resolve the compensation dispute between Kaufmann and Siemens—is more akin to the bonuses discussed in *Runyon* and *Dallenbach* than to regular, monthly commissions. It would "make little sense to say that" this accommodation "is 'wages due' and must [have] be[en] paid in at least monthly installments." *See Dallenbach*, 459 N.W.2d at 489.

Because Kaufmann's Pay Plan does not entitle him to compensation for sales made by Siemens's direct sales force, we agree with the district court that Kaufmann's claim is for compensation more akin to a discretionary bonus than regular commissions to be paid at least monthly. Therefore, because Siemens did not intentionally fail to pay Kaufmann wages "pursuant to section 91A.3" when it reneged on Patton's promise to resolve Kaufmann's compensation dispute, we find that the district court did not err in granting Siemens's renewed motion for judgment as a matter of law on Kaufmann's claims for liquidated damages under the IWPCL.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____