# IN THE COURT OF APPEALS OF IOWA

No. 23-1532
Filed February 19, 2025

**RICHARD RYAN RADLOFF,**
     Plaintiff-Appellant,

**vs.**

**PTC TRUCKING, LLC,**
     Defendant-Appellee.

_____

Appeal from the Iowa District Court for Chickasaw County, Laura Parrish, Judge.

Following a bench trial, the plaintiff appeals the district court's ruling in favor of the employer in a wage-claim action. **AFFIRMED.**

Charles Gribble and Christopher Stewart of Gribble Boles Stewart & Witosky Law, Des Moines, for appellant.

Kevin J. Visser and Nicholas Petersen of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

After a bench trial, Richard Radloff appealed the district court's ruling that he is not entitled to collect a mid-year bonus or a mileage bonus for 2020 from his former employer, PTC Trucking, LLC, under Iowa Code chapter 91A (2020). The district court decided the bonuses were discretionary—not wages under chapter 91A. And as a result, PTC Trucking was not obligated to pay Radloff bonuses for his work when he left in July 2020. Concluding that the record supports the ruling that bonuses were discretionary, we affirm.

**I. Background Facts and Proceedings.**

Because, at its core, this is a contract dispute, we start with the details of Radloff's hire. The testimony at trial established that Radloff worked as a truck driver for PTC Trucking, hauling torque converters to and from Precision of New Hampton, a repair facility in Chickasaw County, Iowa. The signed April 20, 2015 "Legal and Binding Agreement" set out the terms of the employment between Radloff and "Precision of New Hampton/Precision Torque Converters."[1] Initially Radloff sued Precision of New Hampton, Inc. and, in its answer, it admitted it was Radloff's employer. Several months later, Radloff amended the petition to substitute PTC Trucking, LLC based upon defense counsel's representation that it was the proper party. So, we accept the designation of PTC Trucking as the employer as true even though the written employment agreement does not reference that nomenclature. Dennis Hansen, the owner/operator of both Precision of New Hampton and PTC Trucking, testified that the two companies

---

[1] The owner of these companies, Dennis Hansen, testified that Precision Torque Converters is known as PTC Trucking.

were separate and distinct[2] and that only PTC Trucking employed Radloff. Contrary to that testimony, the written contract defined duties between Radloff and "Precision" and included the agreement that Precision would "[p]ay [Radloff] $.41 a mile to drive, deliver, return paperwork and all other items *Precision* considers his work duties." (Emphasis added.) As the evidence showed the companies were involved with Radloff as if they were joint decisionmakers—both guiding his actions and compensation. Although the written agreement was silent on bonuses, Radloff claims that he was told he would definitively receive bi-annual bonuses when he was hired in 2015.

According to Radloff, during his June 2019 work evaluation, Hansen and two other principals with Precision of New Hampton told Radloff "that on top of the regular bonus that they were going to give an additional $0.02 bonus as long as [he] met all their . . . needs and did the job properly and . . . that none of that should ever be deducted." Hansen did not remember any specific details about the meeting when asked about it at trial. To reinforce his position at trial, Radloff produced the 2019 "evaluations bonus sheet," which described what numerical deductions would be taken off a bonus for certain infractions and at the bottom of the page it was noted: "$0.02/mile bonus, in addition to the regular bi-annual Bonus." The extra bonus was paid to Radloff at the end of 2019.

By all accounts, from mid-2015 to 2019, the employment relationship went well, and Radloff received bonuses mid-year and at year-end over that time period. His PTC Trucking employment records confirmed the following:

---

[2] According to Hansen, Precision of New Hampton contracted with PTC Trucking to deliver its products.

|        | Mid-year Bonus | Year-end bonus |
|--------|----------------|----------------|
| 2015   |                | $5000          |
| 2016   | $2500          | $5000          |
| 2017   | $3000          | $5000          |
| 2018   | $3000          | $5000          |
| 2019   | $3000          | $5910          |

Some evidence suggested that the 2016 mid-year bonus was reduced by $500 because of an accident Radloff had in that year, and the extra $910 paid in 2019 at year-end related to the new mileage bonus of $.02 per mile instituted in that year.

Radloff experienced some issues that impacted his ability to drive due to a medication he was taking related to the COVID-19 pandemic. In May 2020, Radloff gave the ninety-day notice required by the agreement and notified the company he was leaving their employ on July 30. PTC Trucking found another driver and released Radloff from their employ on July 24, 2020, per the PTC Trucking employment file.

After his resignation, PTC Trucking paid Radloff his regular mileage rate, as stated in his 2015 employment contract, but did not disperse a mileage bonus or a mid-year bonus. On September 1, 2020, through counsel, Hansen and PTC Trucking were put on written notice Radloff would file a claim under Iowa Code chapter 91A if he did not receive the bonuses. The notice provided a deadline to "release and resolve the matter" if PTC Trucking paid both bonuses by September 15. After various emails and a telephone conversation with Radloff's counsel where counsel told Hansen about the possible legal ramifications of withholding the bonuses, on October 13, Hansen reached out to Radloff via email,

stating, "I am sending you this email to let you know that you will be getting a bonus, that was held up due to business reasons. I hope to have them done this coming week." One week later, Hansen emailed Radloff again and said:

> I just remembered you had hired an attorney and if you are still working with him? I should deal with him?
> As a good will gesture only, as bonuses are not obligated by me in any fashion to you or any other employee.
> We will be adjusting for walking away from your job 1 week and not taking your route which put us at a hardship to find a driver on April 6th route and the 4 to 5 weeks you missed.

Radloff relied on these emails to show PTC Trucking conceded he was owed one or more of the bonuses. In the run-up to trial, PTC Trucking moved in limine to exclude these emails discussing the bonuses, but the court ruled:

> It is not clear to the Court what Mr. Hansen's email was intended to be. It was sent directly to [Radloff], despite [Radloff's] attorney having communication with Mr. Hansen before that time. It does not appear to have been provided directly in response to any communication from [Radloff's] counsel, and a later email references a "good will gesture" on behalf of [PTC Trucking], not an admission of any entitlement to a bonus. No specific amount of money is ever referenced and there is no indication what, if anything, is sought from the [Radloff] in return. Again, because the parties elected to waive a jury trial in this matter, the Court is in a position to consider the value of any testimony on this issue with little risk for prejudice. Because the Court cannot determine with certainty that [PTC Trucking's] email is evidence of a compromise, or a negotiation intended to avoid a lawsuit, part one of [PTC Trucking's] Motion in Limine is DENIED.

The matter proceeded to a bench trial. After considering the October 13, 2020 email indicating a bonus was forthcoming, the district court reasoned that Radloff's suggested understanding of Hansen's email—that the mid-year and mileage bonus were wages owed to Radloff—was:

> [C]ontradictory to other credible evidence[;] . . . the timing of both [Hansen's] emails suggests that any payment was intended to be a good will gesture to avoid any further threat of legal action. To the

extent the emails appear to be evidence of conduct intended to compromise, the Court does not consider them to be an admission of liability. The Court finds that Hansen sent the emails after PTC was threatened with litigation by Radloff and that the offer to pay some bonus was, in fact, an offer to settle any potential claim.

At trial, the court heard testimony from Radloff, Hansen, and Susan Underwood (the companies' bookkeeper). In the end, the court entered judgment in favor of PTC Trucking, finding both the mid-year and extra mileage bonuses were discretionary so there was no contractual duty to award Radloff either bonus for 2020. The court denied Radloff's claims and dismissed his lawsuit. Radloff appeals.

## II. Standard of Review.

"Our review of a decision by the district court following a bench trial depends upon the manner in which the case was tried to the court." *Hindman v. Hindman*, 988 N.W.2d 420, 425 (Iowa Ct. App. 2022) (citation omitted). Because this case "was tried at law, our review is limited to the correction of legal error." *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 651 (Iowa 2002); *see* Iowa R. App. P. 6.907. While "[t]he district court's well-supported factual findings are binding on us," "[w]e are not . . . bound by the district court's legal conclusions." *United Fire & Cas. Co.*, 642 N.W.2d at 651.

## III. Discussion.

In this chapter 91A wage claim, Radloff argues he is entitled to a 2020 mid-year bonus of $3000 and his $0.02 mileage bonus as wages owed. He argues he was entitled to these payments because he was promised bi-annual bonuses when he was hired and received them every year he was employed until 2020—his last partial year of employment with PTC Trucking. To this point, Radloff contends

Hansen admitted in the October 13 email, followed by another email on October 16, that a bonus was due. Regarding the mileage bonus, Radloff points to the June 2019 change in benefit memo. Radloff asserts he was promised a mileage payment of $0.02 cents per mile as a bonus over and above the 2015 contracted rate of $.41 cents per mile. On this second bonus claim, he urges that he is owed $1210.78. And because these wages were withheld from him intentionally, Radloff asserts the district court should have awarded him liquidated damages, court costs, and attorney fees pursuant to section 91A.8.

PTC Trucking responds that the district court correctly found the bonuses were discretionary and not promised to Radloff, so they were not "wages," and that the emails between Hansen and Radloff were only intended to be a "good will gesture" to avoid litigation. As to the mileage bonus, PTC Trucking contends that the bonus was only paid to employees at year-end and, because Radloff terminated his employment in July, he was not entitled to it. Then in an argument Radloff maintains was not advanced at trial, PTC Trucking contends the bonuses were set by a third-party (Precision of New Hampton) that had no employment relationship with Radloff, thus, they were not "wages" paid by Radloff's employer under Iowa Code section 91A.2.

Having laid the groundwork, we start with PTC Trucking's new argument and then review the district court's ruling with the central question being: did the court err in its determination that neither the mid-year bonus nor the mileage bonus constituted wages that PTC Trucking owed to Radloff?

*Employment Relationship.* While there was evidence at trial that Hansen "personally" made the decision to award bonuses and that the payment came from

Precision of New Hampton, the actual checks to Radloff came from PTC Trucking. On appeal, PTC Trucking attempts to further distance itself from the bonus decision by expanding its arguments made before the district court to now include the position that because the bonus decision was determined by Precision of New Hampton, a third-party, and not Radloff's employer, the wage claim fails. We decline to entertain this argument for several reasons. First, it was not the position urged below, as the focus was on the discretionary nature of the bonuses from PTC Trucking. Although PTC Trucking was the successful party and not obligated to request a ruling on this issue from the district court before appealing, our error preservation rules still require that the record below show that the argument was urged below, even if not part of the ruling. *See Johnston Equip. Corp. v. Indus. Indem.*, 489 N.W.2d 13, 16 (Iowa 1992) ("[A] successful party need not cross-appeal to preserve error on a ground *urged* but ignored or rejected in trial court." (emphasis added)). In our review of the pleadings and transcript, we find no similar argument urged below. And, in fact, when Radloff first sued Precision of New Hampton in this wage claim, Precision of New Hampton admitted in its answer that Radloff was one of its employees. On top of that, the "Legal and Binding Agreement" specifically treats both companies as one employer of Radloff. So, we bypass any argument over a third-party defense, as that argument was not preserved. We turn to the challenge over the determination Radloff was not owed a wage.

*Entitlement to the Bonuses.* First, both parties concede that Radloff was an employee of PTC Trucking and it was the entity that issued checks to Radloff while he was employed, including payment of the bonuses. Both parties concede that

Radloff was paid twice-annual bonus payments from 2015 to 2019 and an additional mileage bonus in 2019. The question here relates to 2020 and whether PTC Trucking was obligated to pay the mid-year bonus and the mileage bonus at the end of Radloff's employment in July.

Radloff contends his entitlement to the bonuses was settled when Hansen admitted liability in the October email messages he sent. Iowa Code section 91A.7 provides that in the case of wage disputes, an "employer shall . . . pay all wages conceded to be due." In his appellate brief, Radloff focuses on two emails, sent on October 13 and 16, to claim Hansen "admitted[ed] the bonus was owed, guarantee[d] a bonus, and [stated] that if PTC had made a mistake, it 'will gladly pay.'" Radloff asks us to reconsider how the district court interpreted the messages in the emails from Hansen. Before trial, the district court made it clear that it could not preliminarily determine if the emails were settlement offers or admissions of liability, so it allowed the parties to develop at trial the reasons they were sent. Viewing the emails in isolation, Radloff's interpretation is not implausible. But the district court considered the emails in conjunction with Hansen's testimony and then reasoned that "Hansen sent the emails after PTC Trucking was threatened with litigation by Radloff and that the offer to pay some bonus was, in fact, an offer to settle any potential claim." In other words, the district court rejected Radloff's contention that the emails constituted an admission that the bonuses were owed wages.

As developed at trial, on September 1, 2020, Radloff sent a letter, putting Hansen and PTC Trucking on notice that Radloff was owed "a mid-year bonus of $3,000 and $0.02 per mile bonus." Nearly six weeks later, on October 13, Hansen

emailed Radloff directly, letting him know he would be "getting a bonus, that was held up due to business reasons." Three days later, on October 16, Hansen emailed Radloff once again, clarifying that the payment was a "good will gesture only, as bonuses are not obligated by me in any fashion to you or any other employee." Taken as a whole, one reasonable interpretation is that Hansen decided to pay a bonus to Radloff to stop the then-churning wheels of litigation. Also, while Hansen may have been willing to provide a bonus before the litigation ramped up, the October 16 email supports PTC Trucking's position that any payment made was in fact discretionary. Based on the circumstances surrounding the October 13 and 16 emails, we find the court did not err in finding the communications to be attempts to avoid litigation.

But the answer to the wage question posed earlier comes down to whether there is a valid agreement between Radloff and PTC Trucking to pay either of the bonuses. So, we look to how chapter 91A applies generally to the payment of bonuses. Chapter 91A provides an avenue for an employee to recover wages improperly withheld by an employer. "Wages" means, among other things, "compensation owed by an employer for . . . [l]abor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation." Iowa Code § 91A.2(7)(a). The purpose of chapter 91A is to "facilitate collection of wages by employees." *Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 586 (Iowa 2002) (citation omitted). Bonuses may be considered wages, under the terms of the statute, if the employer is contractually bound to pay them. *See Dallenbach v. MAPCO Gas Prods., Inc.*, 459 N.W.2d 483, 488 (Iowa 1990) (finding an annual bonus, whose amount is dependent on the overall profit

at year-end, would be considered a "wage" under chapter 91A because the employer was contractually bound to pay the annual bonus based on a specific formula). Discretionary bonuses do not qualify as wages if the employer is not bound to pay. *Runyon*, 653 N.W.2d at 586 ("[Defendant] rightly notes that in *Dallenbach* we suggested that a bonus cannot be 'due'—as that term is used in section 91A.3(1)—until it can be accurately estimated in accordance with the parties' agreement."); *see Dallenbach*, 459 N.W.2d at 489. To determine if PTC Trucking was bound to pay either of these bonuses, we start with the 2015 written employment agreement. Because that document makes no reference to bonuses, we must go further to see if there was an oral agreement to pay. "Whether an oral contract existed, what its terms were, and whether it was breached ordinarily are questions for the trier of fact." *Dallenbach*, 459 N.W.2d at 486. We address each category of bonus separately.

*Mid-Year Bonus.* Radloff makes a compelling argument here. Beginning with year-end 2015, Radloff received twice-annual bonuses, mostly in the same amounts depending on if it was a mid-year bonus or a year-end bonus. And when Radloff left his employment, Hansen confirmed in the October 13 email that Radloff "will be getting a bonus." But, Radloff testified he was unaware of the criteria involved with setting the bonus and did not know of any employee who quit and then received the bonuses. Hansen and Underwood provided that detail for the district court. Several reasons were given for why Radloff did not receive the 2020 mid-year bonus. Hansen first discussed that he set the bonuses and Radloff had cost the company significant monies when, on short notice, Radloff did not come to work earlier that year, requiring the company to ship products more expensively

through another shipping service. Although Hansen considered offering a "good will" payment to Radloff, he changed his mind after Radloff cost him litigation expense.

In making the decision to pay any employee a bonus, Hansen testified he considered the economy and the company's performance. Hansen noted that in 2020, about two-thirds of the employees in both companies (Precision of New Hampton and PTC Trucking) had their bonuses either reduced or eliminated due to the "drastic conditions" created by the economic uncertainty surrounding the COVID-19 pandemic. Moreover, Underwood confirmed the company policy that an employee who quit their employment would not receive a mid-year or year-end bonus. Underwood also reiterated the discretionary nature of the mid-year bonus; bi-annual bonuses were not fixed, and the owners had discretion as to whether a bonus would be paid. And as for 2020, not everyone received a bonus and, among those who did, the bonuses were not uniform. Directly conflicting with Radloff's argument, Hansen and Underwood testified the bi-annual bonuses were not guaranteed.

Hansen was clear at trial and in his October 16 email, there was no entitlement to the bi-annual bonuses. When there is no contractual right to a bonus and the employer has discretion to whom to pay a bonus or to elect not to give any bonus at all, the bonus is not a wage under chapter 91A. *See Devore v. Dallas Grp. of Am., Inc.*, No. 98-2119, 1999 WL 1073850, at *1–2 (Iowa Ct. App. Nov. 23, 1999) (finding summary judgment in the employer's favor was appropriate because the employee was not entitled to wage enforcement under chapter 91A where the company had complete discretion whether to give a bonus and there was no

contractual entitlement). We agree with the district court that PTC Trucking was not contractually obligated to pay Radloff the mid-year bonus and thus, it was not a wage under chapter 91A.

*Mileage Bonus.* The lack of entitlement to the 2020 mileage bonus is clear cut. While all agree that there was an additional mileage bonus established in 2019, both Hansen and Underwood testified that the mileage bonus would not be paid to any employee unless they were employed at year-end. Trouble is, Radloff resigned mid-year, severing the employment relationship. As Hansen described it, he set up the mileage bonus as a retention tool and distributed it to drivers still employed at PTC Trucking at the year end. Because Radloff was no longer an employee at the end of 2020, under the terms of the company policy, Radloff was not entitled to the payment under either the written contract or any oral contract.

In sum, the credible evidence shows bonuses were not the subject of a written or oral contract, nor were they guaranteed. The bi-annual bonuses varied from employee to employee, with a vast swath of the company not receiving a bonus in 2020. The mileage bonus was subject to deductions based on performance and, after its inception in 2019, given to drivers at the end of the year as a retention incentive. The record supports PTC Trucking's repeated claim that bonuses were discretionary, determined by Hansen based on how he felt "the person is doing [at] his job." Because both the mileage and bi-annual bonuses were discretionary, and PTC Trucking was not bound to pay them, we find the bonuses do not qualify as "wages" under section 91A.2. As a result, PTC Trucking is under no obligation to pay Radloff a bi-annual or mileage bonus from 2020.

*Other Requests for Damages.* Because chapter 91A does not apply to these discretionary bonuses, Radloff has no entitlement to an award of liquidated damages, court costs, and attorney fees under section 91A.8.

## IV.  Conclusion.

We affirm the district court's ruling in favor of PTC Trucking for the reasons stated above.

**AFFIRMED.**