# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3866

_____

| | | |
|---|---|---|
| Herman Roberts, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Kenneth S. Apfel, Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 10, 2000

Filed: July 28, 2000

_____

Before WOLLMAN, Chief Judge, MURPHY, Circuit Judge, and GOLDBERG,[1] Judge.

_____

WOLLMAN, Chief Judge.

_____

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

Herman Roberts appeals from the district court's[2] judgment affirming the denial of his application under the Social Security Act for disability insurance benefits pursuant to Title II, 42 U.S.C. §§ 416(i) & 423, and for supplemental security income pursuant to Title XVI, 42 U.S.C. § 1381a.   We affirm.

## I.

Roberts was born on November 5, 1962, and has an eighth-grade education and Job Corps training in sheetrock finishing.  His past relevant work experience includes that of a sheetrock finisher, painter, cook, janitor, maintenance worker, and laborer.  Roberts protectively filed his application for benefits on December 20, 1994, alleging an onset disability date of December 9, 1994.  Roberts asserts that he is unable to work because of a learning disability and back problems.

The Social Security Administration denied Roberts's application initially and again on reconsideration.  Roberts then requested and received a hearing before an administrative law judge (ALJ).  The ALJ evaluated Roberts's claim according to the five-step sequential analysis prescribed by the social security regulations.  See 20 C.F.R. §§ 404.1520(a)-(f); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing analysis).  The ALJ held that Roberts had not engaged in substantial gainful activity since December of 1994 and had the following impairments:  central disc herniation at L5-S1, borderline intellectual functioning, and chronic alcohol abuse.  The ALJ determined that this combination of limitations did not meet or equal a listed impairment but did prevent Roberts from returning to his past relevant work.  The ALJ also found that although Roberts's impairments preclude him from jobs that require

---

[2]The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas, adopting the findings and recommendations of the Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas.

heavy, strenuous physical activity, extensive written instructions, complex tasks, or high levels of judgment, Roberts retains sufficient residual functional capacity to perform a limited range of sedentary and light work, and thus that Roberts was not disabled within the meaning of the social security regulations.

The Social Security Appeals Council denied Roberts's request for further review; therefore the ALJ's judgment became the final decision of the Commissioner of the Social Security Administration. Roberts then sought review in the district court, which granted summary judgment in favor of the Commissioner. Roberts now appeals, arguing that the ALJ erroneously determined how his mental impairments affect his residual functional capacity and that the hypothetical question asked by the ALJ was flawed because it failed to include the full extent of his mental limitations.

## II.

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. See id. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, see id., or because we would have decided the case differently. See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

## A.

Roberts argues that the ALJ's determinations regarding the effect of his mental impairments are flawed because they are not based on substantial evidence in the record and because the ALJ reached his conclusion without following proper procedure. The ALJ determined that although Roberts's intellectual functioning is borderline deficient and he cannot read well, he has also spent his working life with the same mental capabilities. Thus, the ALJ concluded that Roberts could perform work that has intellectual requirements similar to or less taxing than those of jobs that he has performed in the past. The ALJ also found that although Roberts currently may be suffering from depression, the disorder appears to be situationally related (that is, related to not having a job and income) because the evidence does not document any diagnosable anxiety or organic mental disorder. Accordingly, the ALJ found that Roberts's mental capabilities preclude him only from that work which requires extensive written instructions, complex tasks, or high levels of judgment.

As support for his argument about the lack of substantial evidence, Roberts points us to an analysis performed by Disability Determination Services (DDS) physicians, who concluded that Roberts's mental impairments moderately limit him in the areas of concentration, persistence, or sustained pace. He argues that the ALJ improperly concluded that Roberts's mental deficiencies, in combination with his physical impairments, do not render him disabled, contending that the ALJ may not disregard the DDS physicians' assessment because of what may seem to be the contrary evidence of his daily activities.

We conclude that substantial evidence in the record supports the ALJ's decision. An ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, see Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995), and here the ALJ properly examined the evidence in the record. The ALJ noted that Roberts successfully had held employment for many years with the cognitive

abilities he currently possesses. Indeed, Roberts had most success with employment in the trade of sheetrock finishing, in which he had been trained by Job Corps, demonstrating that he is capable of receiving and successfully applying job skill training. The ALJ also recorded how Roberts's mental impairments did not prevent him from engaging in substantial activities of daily living: Roberts cares for his family, performs household chores, drives a car, visits friends, plays games such as dominoes and cards with his friends, and plays catch with his son. Roberts also pays bills, passed an oral drivers' license exam, and testified that he could follow the instructions necessary for making a cake. The ALJ further noted that Roberts is able to communicate and to behave appropriately, is capable of using judgment, and has no disturbance in his thinking or deficiencies in memory.

The medical evidence also supports the ALJ's conclusion. The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in Roberts's mental capabilities disfavors a finding of disability. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990) ("[The claimant] worked with his impairments over a period of years without any worsening of his condition. Thus, he cannot claim them as disabling."). In January of 1995, Dr. James Moneypenny, a psychologist, administered to Roberts the Wechsler Adult Intelligence Scale-Revised, on which Roberts obtained a full scale intelligence quotient (IQ) score of 80.[3] This score places him in the range for borderline intellectual functioning, which, according to Dr.

---

[3] Borderline intellectual functioning is a condition defined as an IQ score within the 71-84 range, while mental retardation is a score of about 70 or below. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 39-40, 684 (4th ed. 1994). "To put the term [borderline intellectual functioning] in perspective, the Social Security Administration considers a person with an IQ of 59 or less presumptively disabled," Thomas v. Sullivan, 876 F.2d 666, 668 n.1 (8th Cir. 1989), and a person with an IQ of 60 through 70 with some other physical or mental impairment imposing work-related limitations presumptively disabled. 20 C.F.R. Part 404, Subpt. P, App. 1, 12.05C.

Moneypenney's report, does not suggest a specific learning disability. An assessment by Arkansas Rehabilitation Services in May of 1995, which was based on a battery of other intelligence tests, concluded that although Roberts was functioning within the average range of intelligence, he may have difficulty with reading, comprehending written instructions, and math, and thus require verbal direction or hands-on job training. The conclusion of the DDS physicians--that Roberts suffers deficiencies in the areas of concentration, persistence, and pace--is not inconsistent with that of the ALJ, who found that Roberts has mental impairments that would preclude him from performing work that required constant reading of instructions, complex tasks, or high levels of judgment. To the contrary, the DDS physicians concluded that Roberts could perform work in which interpersonal contact is routine but superficial and in which tasks are no more complex than those that can be learned through experience or training. Accordingly, we conclude that the ALJ's decision is supported by substantial evidence.

Additionally, Roberts urges us to reverse on procedural grounds because the ALJ failed to attach to his opinion a completed Psychiatric Review Technique Form (PRTF), which "is a standard document which generally must be completed when a claimant alleges a mental impairment." Mapes v. Chater, 82 F.3d 259, 262 n.8 (8th Cir. 1996). The Commissioner points out that Roberts did not make this argument before the magistrate judge, and argues that Roberts therefore should be barred from presenting it for the first time on appeal. Roberts argues that because he raised the claim in his objections to the magistrate judge's proposed findings, which are reviewed by the district court de novo, we should consider the issue to have been properly raised below. We disagree.

Although Roberts need not raise every argument to the Appeals Council to preserve his claims for judicial review, see Sims v. Apfel, 530 U.S. __, ___, 120 S. Ct. 2080, 2084 (2000), it is well established that, unless a manifest injustice would result, a claim not articulated to the district court is subject to forfeit on appeal. See Craig,

212 F.3d at 437, Misner v. Chater, 79 F.3d 745, 746 (8th Cir. 1996).  The question, then, is whether a claimant may make arguments in his objections to a magistrate judge's report when those arguments have been neither argued to the magistrate judge nor addressed in the judge's report adopted by the district court, and then obtain review of them on appeal.

We conclude that Roberts's situation is tantamount to those in which a claimant raises on appeal an argument not presented to the district court.  We have stated that the "purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court."  Reciprocal Exch. v. Noland, 542 F.2d 462, 464 (8th Cir. 1976).  Other courts of appeals have held in the context of a social security case that a claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review.  See, e.g., Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996) (issues first raised in objections deemed waived); Greenhow v. Secretary of Health & Human Servs., 863 F.2d 633, 638 (9th Cir. 1988) (Magistrates Act not "intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court."), overruled in part on other grounds, United States v. Hardesty, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc) (per curiam); Borden v. Secretary of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) (per curiam) ("Parties must take before the magistrate, 'not only their best shot but all of their shots.'") (internal quotation marks and citation omitted)).  To hold otherwise would allow a claimant to raise new claims to the district court and thus effectively have two opportunities for judicial review.  Accordingly, in the absence of a showing by Roberts that a manifest injustice would result from our failure to do so, we decline to address Roberts's contention that the ALJ erred in failing to attach a completed PRTF.

**B.**

Roberts next contends that the ALJ's determination that he retains the ability to perform a significant number of jobs within the category of sedentary and light work is not supported by substantial evidence because the ALJ relied on the vocational expert's response to a flawed hypothetical question. Roberts also points out that the ALJ failed to expressly acknowledge the shifting of the burden to the Commissioner at this step of the sequential analysis.

"Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997). Although "questions posed to vocational experts should precisely set out the claimant's particular physical and mental impairments, . . . a proper hypothetical question is sufficient if it sets forth the impairments which are accepted as true by the ALJ." House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994) (internal citations, quotation marks, and alterations omitted). We will reverse where the ALJ fails to acknowledge the shift in burden to the Commissioner in determining if the claimant can perform a significant number of jobs in the national economy except in those cases in which the evidence is so strongly against the claimant that "the outcome is clear regardless of who bears the burden of proof." Butler v. Secretary of Health & Human Servs., 850 F.2d 425, 426 (8th Cir. 1988); see Pope v. Bowen, 886 F.2d 1038, 1040 (8th Cir. 1989).

The hypothetical question that the ALJ posed to the vocational expert assumed an individual with Roberts's age, education, work experience, physical limitations, additional impairments of depression and a diminished reading ability, and the functional limitation that Roberts could do "no job requiring frequent, extensive or [constant] reading of written instructions...." The vocational expert responded that although such an individual could not perform Roberts's past work, he could perform

a range of jobs within the sedentary category, such as laborer and small parts assembler. The functional limitations of the ALJ's hypothetical question involving Roberts's intellectual deficiencies were based upon Roberts's limitations as the ALJ had previously determined them, thus capturing the concrete consequences of Roberts's impairments, and thus we find no error. We therefore conclude that the ALJ's determination that Roberts could perform a range of jobs in the national economy is supported by substantial evidence.

Lastly, Roberts argues that the ALJ's failure to acknowledge the shifting burden requires us to reverse. Although Roberts did not raise the issue before the magistrate judge, the judge noted this deficiency but held that it did not constitute reversible error because the evidence "is so strongly against" Roberts's position. See Pope, 886 F.2d at 1040. Roberts relies heavily on the DDS physicians' observations about his difficulty with persistence, concentration, and pace to support his argument that not all the evidence is against him, but as noted above, the DDS physicians also concluded that Roberts was not disabled and could perform work involving routine and superficial interpersonal contact and tasks that are no more complex than those that may be learned through training. Moreover, the vocational expert also opined that the jobs he suggested do not involve strict industrial standards for pace or productivity such as would be involved in assembly line jobs. Accordingly, any failure on the ALJ's part to acknowledge that the burden had shifted to the Commissioner is not grounds for reversal.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.