BYE, Circuit Judge.
American Family Mutual Insurance Company (“American Family”) appeals the district court’s[1] order denying its motion for judgment as a matter of law or, in the alternative, for a new trial and awarding Richard N. Hollander $261,781.53 in attorney’s fees pursuant to section 91A.8 of the Iowa Wage Payment Collection Law (“IWPCL”). We affirm.
I
American Family is a mutual insurance company selling a broad range of commercial and personal lines of insurance. In 1982, Hollander began serving as a licensed insurance agent for American Family, with an office in Dubuque, Iowa. On January 1, 1993, Hollander and American Family entered into an American Family Agent Agreement (“the Agreement”), which was to serve as the governing document for the parties’ relationship.
*345 On July 31, 2008, after serving as an insurance agent for American Family for twenty-six years, Hollander terminated his relationship with the company. The next day, he sent a letter to some 1,200 “valued clients,” informing them he had decided to end his affiliation with American Family and open his own independent insurance agency. Hollander further informed his “valued clients” he could no longer service any policies issued by American Family and advised them to contact the company directly with any questions about their existing policies. Hollander noted his letter was not intended to “induce or attempt to induce any current policyholder to cancel, lapse or surrender any policy in force” with American Family.
The termination took effect on August 1, 2008. Under section 6(1) of the Agreement,[2] American Family was to begin making “extended earnings” payments to Hollander. Based on a specified formula, Hollander was to receive a total of $331,955 in extended earnings payments and the sum was to be paid in equal monthly installments over a thirty-six month period.
Initially, American Family began making the extended earnings payments in the intervals specified by the Agreement. After making four such payments, however, American Family informed Hollander of its decision to discontinue “the payment of any and all extended earnings” pursuant to section 6(u) of the Agreement, which provides an agent forfeits his right to extended earnings if he does not comply with the after-termination provisions of section 6(k). Section 6(k), entitled “Your Activity After Termination,” does not allow an agent “[fjor a period of one year following termination” of the Agreement to
either personally or through any other person, agency, company or organization directly or indirectly induce, attempt to induce or assist anyone else in inducing or attempting to induce any policyholder of the Companies credited to [the agent’s] account at the time of termination to lapse, cancel, replace or surrender any insurance policy in force with the Companies.
JA at 1189. Asserting Hollander was in violation of section 6(k), American Family stopped making extended earnings payments as of November 2008.
On November 24, 2008, American Family filed suit against Hollander, seeking compensatory damages, punitive damages, injunctive relief, and a declaratory judgment. In a five-count complaint, American Family alleged computer fraud, misappropriation of trade secrets, breach of contract, intentional interference with contractual obligations, and a request for a declaratory judgment the company had no obligation under the Agreement to pay Hollander extended earnings. American Family also filed a motion for a preliminary injunction, seeking to enjoin Hollander from engaging in activities violative of section 6(k) inasmuch as he was inducing or attempting to induce his former clients to “lapse, cancel, replace or surrender” their existing policies with American Family and purchase insurance through his new agency. Hollander resisted the preliminary injunction motion and filed a par *346 tial motion to dismiss for failure to state a claim. The district court, adopting the report and recommendations of the magistrate judge,[3] granted American Family’s request for injunctive relief and denied Hollander’s motion to dismiss.
On June 2, 2009, Hollander filed his answer to American Family’s complaint. In his answer, Hollander included counterclaims for breach of contract, intentional interference with contractual relations, injurious falsehood, and a violation of ERISA. The case was set to proceed to trial on May 2, 2011, and the final pretrial conference was held on April 4, 2011, before the magistrate judge. On April 15, 2011, the district court held a status conference to discuss the upcoming trial. During this conference, Hollander orally advised American Family and the district court of his intention to pursue a claim for unpaid wages under the IWPCL,[4] and subsequently filed a motion to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. American Family resisted the motion and conditionally moved to continue trial in the event the Rule 15(a) motion was granted.
The trial court denied Hollander’s motion to amend, explaining:
In considering whether leave should be granted for amendments to pleadings before trial, [Rule] 15(a)(2) provides in part that “the court should freely give leave when justice so requires.” However, [Rule] 16(b)(4) [governing pretrial conferences and scheduling] provides that the scheduling order limiting time for amendment of pleadings “may be modified only for good cause.” The deadline to amend pleadings was July 1, 2009, approximately twenty-one months ago, and trial in this matter is scheduled to begin on Monday, May 2, 2011----[T]he primary measure for good cause is the movant’s diligence in attempting to meet the scheduling order’s requirements.
Order Denying Mot. to Amend, April 21, 2011, at 2-3. Finding Hollander’s proposed amendment was not based on a change in the law or the emergence of new facts, the district court concluded Hollander has failed to show good cause warranting modification of the schedule. Thus, the case proceeded to trial on the original claims and counterclaims.
At the close of American Family’s evidence, Hollander again moved, this time under Rule 15(b)(2) of the Federal Rules of Civil Procedure, to amend his pleadings to conform to the evidence adduced at trial and add the IWPCL claim. American Family resisted, and the court took the issue under advisement. At the close of all the evidence, the district court orally granted Hollander’s Rule 15(b)(2) motion and submitted the case to the jury.[5] The jury returned a verdict in favor of Hollander, finding American Family failed to prove its breach of contract, trade secrets misappropriation, and computer fraud claims. In accordance with the verdict form, which specified that a finding Ameri *347 can Family did not prove Hollander breached the Agreement would result in a verdict for Hollander in the amount of $343,000 (the stipulated amount of Hollander’s unpaid extended earnings under the Agreement), the district court entered a judgment in favor of Hollander for $343,000.
Hollander subsequently filed a motion for attorney’s fees pursuant to section 91A.8 of the IWPCL. American Family resisted, arguing the jury’s finding American Family failed to prove Hollander breached the Agreement was not a finding of liability for purposes of awarding wages under the IWPCL. American Family also moved for judgment as a matter of law or, in the alternative, for a new trial. In support of its motion, American Family asserted the evidence presented at trial established Hollander did in fact breach the Agreement and further asserted it was entitled to a new trial because the district court erred in instructing the jury on the meaning of the term “induce,” in granting Hollander’s Rule 15(b)(2) motion to amend to add the IWPCL claim, and in admitting irrelevant and prejudicial evidence.
The district court granted Hollander’s motion for attorney’s fees in the amount of $261,781.53 and explained:
[American Family] having failed to prove its breach of contract claim, it is undisputed that the extended earnings were owing, and the amount thereof was undisputed. The matter of whether defendant’s wage claim satisfied § 91A.3 [of the IWPCL] is a legal question for the court, and not for the jury. Defendant’s extended earnings are a function of his commission sales, and they are wages within the meaning of the applicable law.... The court is satisfied that defendant’s extended earnings claim is a claim of wages under [IWPCL] § 91A, arising out of the same conduct set out in the original pleadings, was substantively the same claim pressed by the defendant throughout the case, and was inextricably intertwined with the defense of [American Family’s] contention that defendant was not entitled to extended earnings.
Order Granting Mot. for Att’y Fees & Den. Mot. for J. as a Matter of Law, July 8, 2011, at 2-3, 5. The court denied American Family’s motion for judgment .as a matter of law or, in the alternative, for a new trial, concluding the jury’s verdict for Hollander is not against the clear weight of the evidence presented at trial. This appeal follows.
II
On appeal, American Family argues it is entitled to a new trial because the district court abused its discretion in: (1) granting Hollander’s Rule 15(b)(2) motion to amend to add the IWPCL claim; (2) awarding Hollander attorney’s fees; and (3) instructing the jury on contract interpretation principles and the meaning of the term “induce.”
A. Rule 15(b)(2) Motion
We first address American Family’s argument the district court’s grant of Hollander’s Rule 15(b)(2) motion to amend to add the IWPCL claim resulted in a miscarriage of justice, warranting a new trial. ‘We review the district court’s decision to grant or deny a motion to amend for an abuse of discretion.” Baker v. John Morrell & Co., 382 F.3d 816, 830 (8th Cir.2004).
Rule 15(b)(2) provides an issue not raised in the pleadings, but tried by the parties’ express or implied consent, “must be treated in all respects” as having been raised in the pleadings. Fed.R.Civ.P. 15(b)(2). “A party may move—at any time, even after judgment—to amend the *348 pleadings to conform them to the evidence and to raise an unpleaded issue.” Id. The goal of Rule 15(b) is to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel. See Foman v. Davis, 371 U.S. 178, 181-82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Thus, amendments under the rule are to be “liberally granted where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced.” Am. Fed’n of State, Cnty. & Mun. Emps. v. City of Benton, 513 F.3d 874, 883 (8th Cir.2008) (internal quotation marks and citation omitted).
1. Consent to Try the Unpleaded IWPCL Claim
American Family contends the district court abused its discretion in granting Hollander’s Rule 15(b)(2) motion because American Family did not consent, expressly or impliedly, to trying the IWPCL claim. Implied consent exists where a party has “actual notice of an unpleaded issue and ha[s] been given an adequate opportunity to cure any surprise resulting from the change in the pleadings.” Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir.1997) (internal quotation marks and citation omitted). Thus, “[cjonsent may be implied when evidence relevant to an unpleaded issue has been introduced at trial without objection.” Modern Leasing, Inc. of Iowa v. Falcon Mfg. of Cal. Inc., 888 F.2d 59, 63 (8th Cir.1989) (internal quotation marks and citation omitted). Further, we have held a party will be deemed to have acquiesced in trying an unpleaded issue when the issue is “not inconsistent with” the position taken by the non-moving party earlier in the proceedings. Baker, 382 F.3d at 831; see also IES Indus. Inc. v. United States, 349 F.3d 574, 579 (8th Cir.2003).
We first consider whether American Family had actual notice of the unpleaded IWPCL claim. In Nielson v. Armstrong Rubber Co., 570 F.2d 272 (8th Cir.1978), we examined a district court’s decision to allow a plaintiff to amend his pleadings at the close of all the evidence and add strict products liability to the already alleged negligence claim. Noting the defendant had actual notice of the unpleaded, strict products liability claim, yet failed to object to the introduction of evidence relevant to that claim at trial, we found no error in the district court’s decision to allow the amendment. Id. at 275. We cited two reasons for our conclusion the defendant had actual notice of the unpleaded, strict products liability claim. First, we stated the defendant received actual notice when the plaintiff submitted a pretrial memorandum on the first day of trial “citing the law of strict products liability.” Id. Second, we explained the defendant received actual notice when the district court “announced on the third day of trial it was going to treat the pleadings as amended.” Id.
Like the defendant in Nielson, American Family had actual notice of the unpleaded IWPCL claim. American Family first received notice of Hollander’s intent to pursue a claim under the IWPCL at the status conference before trial when Hollander orally moved to amend the pleadings under Rule 15(a). Additionally, in his reply to American Family’s resistance to his Rule 15(a) motion, Hollander expressly stated he “reasonably believes and anticipates that if the Motion to Amend under Rule 15(a) is not granted, he will be making a subsequent Rule 15(b) motion both during and after trial.” JA at 334. Hollander further clarified his intent to litigate the IWPCL claim by submitting as part of his proposed jury instructions a “subject to Rule 15(b) motion” instruction on the IWPCL claim.
*349 Yet, despite its actual notice of the un-pleaded IWPCL claim, American Family failed to object when evidence relevant to the claim was introduced at trial. American Family contends it had no reason to object because evidence that may have been relevant to the IWPCL claim was also relevant to the ERISA claim, which was a part of the lawsuit. American Family further asserts it had no reason to object at trial because after the district court denied Hollander’s Rule 15(a) motion to amend, American Family proceeded to trial with the understanding the IWPCL claim was not part of the case. We disagree.
To begin, we do not question American Family’s argument that evidence bearing on both claims is somewhat overlapping. To prove his IWPCL claim, for example, Hollander had to show he was an “employee” within the meaning of the statute, the extended earnings qualified as “wages,” and American Family intentionally failed to pay him extended earnings. See Iowa Code Ann. §§ 91A.8, 91A.2 (providing an employer is liable for intentionally failing to pay wages to an employee, which includes a commissioned salesperson, and stating “ ‘[wjages’ means compensation owed by an employer for ... any payments to the employee ... which are due an employee under an agreement with the employer”). Hollander also had to show he was an “employee” for purposes of the ERISA claim. See 29 U.S.C. § 1002(6) (defining an “employee” as “any individual employed by an employer”); see also Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (adopting a “common-law test for determining who qualifies as an ‘employee’ under ERISA”). On the other hand, to succeed on his ERISA claim, Hollander had to prove the extended earnings qualified as an “employee pension benefit plan,” not “wages.” See JA at 254 (Hollander’s Answer and Counterclaims); 29 U.S.C. § 1002(2)(A) (defining “employee pension benefit plan” to include a “plan, fund or program ... established or maintained by an employer ... to the extent that ... such plan, fund, or program ... results in a deferral of income by employees for periods extended to the termination of covered employments or beyond”).
This overlap, however, does not excuse American Family from objecting to evidence relevant to the unpleaded IWPCL. See IES Indus., 349 F.3d at 579 (rejecting the argument “Rule 15(b)’s consent requirement is not met where evidence that is relevant to an issue purportedly tried by consent is also relevant to an issue already in the case” because the argument is “an overstatement, if not a misstatement of the law”). As we stated in IES Industries, “[i]t is axiomatic that evidence bearing on both claims and the defenses to those claims may well overlap in a given case,” but this “inevitability does not foreclose amendment under Rule 15(b).” Id. Rather, the dispositive inquiry is whether the non-moving party had actual notice of the unpleaded claim and “an adequate opportunity to cure any surprise resulting from the change of the pleadings.” Kim, 123 F.3d at 1063 (internal quotation marks and citation omitted). Here, American Family knew of Hollander’s intent to litigate the unpleaded IWPCL claim and had the opportunity at trial to cure any surprise by objecting to evidence relevant to the claim, such as evidence characterizing Hollander as an “employee” or describing the extended earnings as “deferred commissions.” It did not. Having failed to object, American Family impliedly consented to trying the unpleaded IWPCL claim and is in no position now to contest the amendment.
*350 We are also unpersuaded by American Family’s argument its failure to object at trial does not amount to implied consent because the district court’s denial of Hollander’s Rule 15(a) motion to amend led American Family to believe the IWPCL claim was not part of the case. Rule 15(b)(2) directs that an issue tried with the express or implied consent of the parties is to be treated in all respects as if raised in the pleadings. Fed.R.Civ.P. 15(b)(2). Thus, a district court’s refusal to permit an amendment before trial does not prevent the court from allowing the amendment if the issue was subsequently tried by the parties’ consent. Cf. U.S. Fid. & Guar. Co. v. U.S. for Use & Benefit of Contractor’s Elec. Supply, Inc., 389 F.2d 697, 698-99 (10th Cir.1968) (concluding that when defendant’s motion to amend was denied before trial, but direct evidence on the sought amendment was admitted at trial without any objection, the issue was tried with the implied consent of the parties). Moreover, the district court did not deny Hollander’s pretrial motion to amend under the liberal standard of Rule 15(a). Rather, the court denied the amendment based on the “good cause” standard of Rule 16(b)—the standard governing a party’s request to amend the pleadings after the scheduling deadline for doing so. See Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir.2008). The court’s conclusion Hollander failed to show “good cause” for the twenty-one month delay in seeking to amend the pleadings to add the IWPCL claim is not to say the pleadings could not be amended to conform them to the evidence presented at trial. See Fed. R.Civ.P. 15(b)(2) (“A party may move at any time—even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.”).[6]
Therefore, we conclude that even if American Family did not expressly consent to trying the unpleaded IWPCL claim by contending throughout the litigation it did not owe Hollander extended earnings, it certainly impliedly consented to trying the claim when it failed to object to evidence relevant to the unpleaded claim despite having actual notice of it.
Additionally, as we explained in Baker, a Rule 15(b)(2) amendment should be allowed “if the amendment seeks to raise an issue not inconsistent with the position taken by the non-moving party earlier in the proceedings.” 382 F.3d at 831. The only dispute between the parties was whether Hollander was entitled to extended earnings payments.[7] The position taken by American Family from the beginning of the case was that Hollander forfeit *351 ed his right to receive extended earnings because he breached the Agreement’s “no-inducement” clause. In other words, American Family’s position from the start was it did not owe Hollander extended earnings. Hollander consequently sought to amend the pleadings to add a claim under the IWPCL to recover the extended earnings, which American Family failed to pay him on the ground he breached the “no-inducement” clause of the Agreement. The amendment, therefore, sought to raise an issue not inconsistent with the position taken by American Family earlier in the proceedings and in light of our holding in Baker, the district court’s decision to allow it was not an abuse of discretion.
2. Prejudice
American Family also contends the amendment should not have been allowed because “the post-eleventh hour addition of the IWPCL” claim deprived American Family of an opportunity to defend against and present evidence relevant to the IWPCL claim, thereby causing prejudice. Appellant’s Br. at 20. We recognize an implied amendment should not be allowed if it will result in substantial prejudice to the non-moving party. Am. Fed’n, 513 F.3d at 883; see also Matter of Beaubouef, 966 F.2d 174, 178 (5th Cir.1992) (holding “[a]n implied amendment of the pleadings will not be permitted where it results in substantial prejudice to a party”) (internal quotation marks and citation omitted); Cioffe v. Morris, 676 F.2d 539, 542 (11th Cir.1982) (stating implied consent for purposes of Rule 15(b) will not be found if the non-moving party will be prejudiced). We fail to see, however, how American Family was prejudiced by the addition of the IWPCL claim.
To determine if a party has been prejudiced by an amendment, we consider whether the party had “a fair opportunity to defend” and whether it “could offer any additional evidence if the case were to be retried.” Nielson, 570 F.2d at 276 (internal quotation marks and citation omitted). Here, American Family certainly had a fair opportunity to defend against the unpleaded claim. As we explained above, American Family knew of Hollander’s intent to pursue the IWPCL claim at trial. It was thus free to object to the introduction of any evidence relevant to the claim or offer any evidence in defense against it. Additionally, after Hollander orally moved to amend the pleadings to add the IWPCL claim at the close of American Family’s evidence, the court took the issue under advisement, and American Family subsequently submitted a nineteen-page brief in opposition of the motion to amend. We therefore reject American Family’s argument the amendment deprived it of an opportunity to defend against the IWPCL claim.
We also fail to see what additional evidence American Family could have offered if the case were to be retried. American Family asserts it could have presented evidence “on the development of the extended earnings program, why it was used, all of the factors that go into its calculation, why it is not a wage, the timing of when it was paid and other additional evidence.” Appellant’s Br. at 23. The record shows, however, that American Family did present such evidence at trial. In addition to Hollander’s extensive testimony on the extended earnings program, American Family offered the testimony of Steve Gol-dermann, the company’s sales manager, and Keith Ryniak, American Family’s sales director. Each testified as to the purpose and use of the program, and Ryn-iak spoke on how extended earnings are calculated.
Moreover, to the extent American Family argues it could have offered evi *352 dence as to why the extended earnings are not “wages” or why Hollander is not an “employee” for purposes of the IWPCL, we note the question of whether Hollander’s wage claim satisfied the applicable sections of the IWPCL is a question of law for the court to decide. See Kaufmann v. Siemens Med. Solutions USA, Inc., 638 F.3d 840, 846 (8th Cir.2011). Here, the district court decided Hollander qualified as an “employee” and further determined the extended earnings qualified as “wages.” American Family does not challenge the court’s legal conclusions on appeal and we see no error in them. See Jeanes v. Allied Life Ins. Co., 300 F.3d 938, 944 (8th Cir.2002) (stating a commissioned salesperson is an employee for purposes of the IWPCL); Kaufmann, 638 F.3d at 844 (concluding the term “wages” under the IWPCL includes commissions and bonuses for labor or services rendered by an employee); see also Iowa Code § 91A.2 (defining the terms “employee” and “wages”).
In sum, we conclude the district court did not abuse its discretion in granting Hollander’s Rule 15(b)(2) motion to amend the pleadings to add the IWPCL claim because the claim was tried with American Family’s implied consent and the amendment did not result in prejudice to American Family.
B. Attorney’s Fees
American Family next asserts the district court erred in awarding attorney’s fees to Hollander under the IWPCL and alternatively argues the amount of the award should be reduced. “The decision to award or deny attorney fees and the amount of any award rests within the sound discretion of the district court and we will not disturb the district court’s decision absent a clear abuse of that discretion.” Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc., 682 F.3d 1091, 1094 (8th Cir.2012) (internal quotation marks and citation omitted). After carefully reviewing the record, we find no abuse of discretion in this case.
Section 91A.8 of the Iowa Code provides “an employer that has intentionally failed to pay an employee wages ... shall be liable to the employee for any wages ... that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney’s fees incurred in recovering the unpaid wages and determined to have been usual and necessary.” (Emphasis added.) “The purpose of the statute is to reimburse the employee for the expenses incurred in suing for back wages.” Gabelmann v. NFO, Inc., 606 N.W.2d 339, 342 (Iowa 2000). Thus, if an employee prevails on a wage claim under the IWPCL, the district court is required to assess attorney’s fees against the employer. Id.; see also Audus v. Sabre Commc’ns Corp., 554 N.W.2d 868, 874 (Iowa 1996) (“The trial court must assess attorney fees when ah employee prevails in a suit brought under chapter 91A [of the IWPCL] and requests such attorney fees.”). The award of attorney’s fees under the IWPCL is mandatory, “irrespective of whether the employer’s conduct was intentional.” Gabelmann, 606 N.W.2d at 343.
American Family does not dispute the mandate for attorney’s fees under section 91A.8 of the IWPCL. Rather, it argues the jury did not find American Family liable for purposes of the IWPCL because the jury’s finding “American Family failed to prove a breach of contract did not constitute an affirmative award of wages under the IWPCL.” Appellant’s Br. at 35-36. We disagree.
The jury found Hollander did not breach the Agreement, entitling him to receive $343,000 in extended earnings from *353 American Family. Once the jury made that finding, the question of whether the extended earnings qualified as “wages” was a legal one for the court, and not the jury, to decide. See Kaufmann, 638 F.3d at 844. Defining the extended earnings as a function of Hollander’s commission sales, the district court concluded the extended earnings are “wages” within the meaning of the IWPCL. See Iowa Code § 91A.2(7) (defining “wages”). The jury’s finding Hollander was entitled to extended earnings, coupled with the district court’s legal conclusion the extended earnings qualify as “wages,” is therefore sufficient to establish liability for purposes of assessing attorney’s fees under the IWPCL. See Maday v. Elview-Stewart Sys. Co., 324 N.W.2d 467, 470 (Iowa 1982) (stating a trial court may not assess attorney’s fees under Iowa Code section 91A.8 “until liability has been established”). Accordingly, the district court did not abuse its discretion in awarding Hollander attorney’s fees under the IWPCL. See id. (stating a trial court must award attorney’s fees to an employee who has prevailed on an IWPCL claim).
American Family alternatively argues that even if the award of attorney’s fees was proper, the amount awarded was an abuse of the court’s discretion. Specifically, American Family asserts the court abused its discretion by awarding Hollander attorney’s fees covering the entire period of the litigation, as opposed to limiting the fees to expenses incurred after the court granted Hollander’s Rule 15(b)(2) motion to amend the pleadings to add the IWPCL claim. Section 91A.8, however, allows a prevailing employee to recover any “attorney’s fees incurred in recovering the unpaid wages and determined to have been usual and necessary.” Iowa Code § 91A.8. The district court found Hollander’s expenses for recovering the unpaid wages began the moment American Family decided to discontinue the extended earnings payments and file a lawsuit against him. In other words, the court determined all fees incurred from the inception of the lawsuit to be fees “usual and necessary” to the recovery of the unpaid wages, ie., the unpaid extended earnings. Given the district court’s broad discretion in determining the amount of attorney’s fees, we cannot say the court’s decision to award Hollander fees for the entire period of the litigation was an abuse of that discretion. And because American Family stipulated the hourly rates and overall amount of time claimed by Hollander were fair and reasonable, we affirm the district court’s award of $261,781.53 in attorney’s fees.
The dissent believes ERISA preemption renders the district court’s consideration of Hollander’s claims for attorney’s fees under the IWPCL erroneous for lack of subject matter jurisdiction. It bases its position on precedent recognizing complete preemption in the context of certain ERISA cases. The dissent fails to note, however, the salient distinction between complete and ordinary preemption in the relevant line of cases: complete preemption has attached to ERISA claims only in the removal context, where an ERISA claim provides the sole basis of federal subject matter jurisdiction. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); Schoedinger v. United Healthcare of the Midwest, Inc., 557 F.3d 872, 874-76 (8th Cir.2009). In contrast, “[w]here preemption involves a choice of law, rather than a choice of forum, it is an affirmative defense.” Piekarski v. Home Owners Sav. Bank, F.S.B., 956 F.2d 1484, 1489 (8th Cir.1992).
In Pilot Life Ins. Co. v. Dedeaux, the Supreme Court concluded that because ERISA’s preemption clause was modeled after the preemption clause in the Labor *354 Management Relations Act (LMRA), the scope of ERISA preemption should be analyzed in light of LMRA precedent. 481 U.S. 41, 44-46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Based on that directive, a number of our sister circuits have concluded that where ERISA preemption would determine merely the choice of substantive law, rather than forum, ERISA preemption is a waivable defense. See, e.g., Saks v. Franklin Covey Co., 316 F.3d 337, 349-50 (2nd Cir.2003); Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 446-47 (1st Cir.1995); Hanson v. Prudential Ins. Co. of Am., 892 F.2d 1046, 1990 WL 1056, at *1-3 (9th Cir.1990) (unpublished decision); Dueringer v. Gen. Am. Life Ins. Co., 842 F.2d 127, 129-30 (5th Cir.1988).
In our own LMRA precedent, we have also drawn a distinction between ordinary preemption, in which the resolution of a state-law claim requires interpretation of a collective bargaining agreement, and complete preemption, in which the LMRA is used to remove a state-law claim to federal court. See Trustees of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 329 n. 3 (8th Cir.2006) (“The Union thus asserts [LMRA] preemption as a defense, raising the question of whether Superior’s [state-law] claim can be litigated in this action. This form of preemption is distinct from the jurisdictional doctrine of complete preemption used to remove state claims to federal court.”); Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir.1996) (“Complete preemption provides an exception to the well-pleaded complaint rule and is different from preemption used only as a defense.”). Accordingly, ERISA preemption may also be categorized as complete or ordinary— and, therefore, jurisdictional or waivable— depending upon the circumstances of a particular case.[8] Because American Family failed to raise ERISA preemption before the district court,[9] we may not consider the issue sua sponte on appeal. See Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir.2000).
C. Jury Instructions
American Family also argues it is entitled to a new trial based on the district *355 court’s erroneous jury instructions. Specifically, American Family challenges Instruction No. 13A (“Contract Terms—Interpretation”) and Instruction No. 14 (“Induce—Defined”). Paragraph 6 of Instruction No. 13A instructed the jury on a rule of contract interpretation known as contra preferentem. It provided: “Ambiguous language in a written contract is interpreted against the party who selected it.” JA at 534. Instruction No. 14 defined the meaning of the term “induce” as “to persuade or urge.” Id. at 535. American Family asserts giving these two instructions together, ie., giving an “overly narrow” definition of the term “induce,” the only possibly ambiguous term in the Agreement, while simultaneously instructing the jury to interpret any ambiguity in the Agreement against American Family, made its burden of proving a breach “a virtual non-possibility.” Appellant’s Br. at 48.
We review for an abuse of discretion a district court’s jury instructions. Der v. Connolly, 666 F.3d 1120, 1126 (8th Cir.2012). “Our review is limited to determining whether the instructions, when taken as a whole and in light of the particular issues presented, fairly and adequately presented the evidence and the applicable law to a jury.” Lighting & Power Servs., Inc. v. Roberts, 354 F.3d 817, 819 (8th Cir.2004). “Where a party contends that an instruction was improperly given to the jury, reversal is appropriate only where the erroneously given instruction affects substantial rights.” Harrell v. Madison Cnty. Miss. Mote Co., Inc., 370 F.3d 760, 762 (8th Cir.2004); see also Fed.R.Civ.P. 61.
Under Wisconsin law, the law governing the parties’ Agreement, contract ambiguity is a question of law for the trial court to decide. Kremers-Urban Co. v. Am. Emp’rs Ins. Co., 119 Wis.2d 722, 351 N.W.2d 156, 163 (1984). A contract term is ambiguous if it is fairly susceptible of more than one reasonable interpretation. Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co., 206 Wis.2d 158, 557 N.W.2d 67, 75 (1996). If the trial court finds a contract ambiguous, the court can properly submit the question to the jury and instruct the jury on principles of contract interpretation. See U.S. Fire Ins. Co. v. Pressed Steel Tank Co., Inc., 852 F.2d 313, 316 (7th Cir.1988) (applying Wisconsin law). If no ambiguity exists, however, the court is to construe the contract as a matter of law and the jury is not to be given the task of interpreting it. See id.; see also D'Angelo v. Cornell Paperboard Prods. Co., 59 Wis.2d 46, 207 N.W.2d 846, 848 (1973) (stating the rule of interpreting a contract against its drafter is inapplicable where the contract is unambiguous).
The district court made no explicit finding as to whether the Agreement as a whole or any of its terms were ambiguous. The court’s decision to define the term “induce” for the jury, however, seems to imply the court found no ambiguity in the meaning of the only arguably disputed term in the Agreement. In the absence of any findings of ambiguity, the district court erred in instructing the jury to interpret any ambiguous language in the Agreement against the drafter, which in this case was American Family.
The court’s error, however, is harmless when viewed in light of the charge as a whole. See Roberts, 354 F.3d at 819-20 (stating an instructional error is not a ground for reversal unless it affects the substantial rights of the party challenging the instruction); see also Fed.R.Civ.P. 61 (providing an error may be disregarded unless it affects a party’s substantial rights). The court instructed the jury on principles of contract interpretation in Instruction No. 13A. The court then told the *356 jury, in Instruction No. 14, “[t]he term ‘induce’ means to persuade or urge.” JA at 535. We find the sequence of the instructions telling. Thus, while we agree with American Family the district court erred by giving the contra preferentem instruction, we disagree giving the two instructions together made American Family’s burden of proving its case a “virtual non-possibility.” Instead, we believe that by defining the term “induce,” Instruction No. 14 effectively told the jury that irrespective of the court’s previous charge on principles of contract interpretation, the jury was to apply the definition of “induce” provided by the court and was not free to apply its own meaning to or alter the interpretation of the term. We therefore conclude any error in giving Instruction No. 13A was harmless in light of the subsequently given Instruction No. 14.
We further conclude the court’s definition of the term “induce” is not “overly narrow” and does not warrant reversal. The district court defined “induce” to mean “to persuade or urge.” Id. (citing Webster’s Dictionary as the authority for the jury instruction). Noting Wisconsin law requires undefined terms in a contract be given their ordinary meaning, see Meyer v. U.S. Fire Ins. Co., 218 Wis.2d 499, 582 N.W.2d 40, 41 (Wis.Ct.App.1998), American Family asserts the court’s definition of “induce” is contrary to the ordinarily understood meaning of the term, which includes “to bring something about.” Appellant’s Br. at 47. Yet, each altérnafive dictionary definition urged for by American Family includes “to persuade” or “to move by persuasion” as part of the meaning of the term “induce,” see id. at 46-47, and at trial, American Family’s own witness defined the term to mean “to persuade or convince or cause somebody to do something,” Trial Tr., vol. II, at 112. “We do not lightly overturn a district court’s choice of words in charging the jury,” Kan. City Power & Light Co. v. Ford Motor Credit Co., 995 F.2d 1422, 1429 (8th Cir.1993), and we decline to do so in a case where the definition provided by the court not only comports with the plain and ordinary meaning of the term, but is essentially the same as the definition provided by the party now challenging it.
Ill
For the reasons stated above, the judgment of the district court is affirmed.

. The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

. Section 6(1) of the Agreement provides, in relevant part:
When this Agreement is terminated, you will be paid Extended Earnings as set out in this contract, if as a condition precedent:
1) Within ten days of the date of termination you have put in the possession of an authorized representative of the Company all policies and policy records ... or other property for which you are a bailee.
2) You have represented the Company under this agreement for a period of at least ten years....
JA at 1189.

. The Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa.

. Section 91A.8 of the Iowa Code provides "the employer shall be liable to the employee for any wages or expenses” the employer intentionally failed to pay, "plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary.”

.Before the case was submitted to the jury, American Family withdrew its claim for intentional interference with contractual relations, and Hollander withdrew his intentional interference with contractual relations and injurious falsehood claims.

. This court’s opinion in Gray v. Bicknell, 86 F.3d 1472 (8th Cir.1996), is not controlling here because it is inapposite both factually and procedurally. See id. at 1481-82 (finding "the district court’s denial of [the plaintiff’s] motion to file a fourth amended complaint clearly placed the prima facie tort claim outside the proper considerations at trial”). Factually, American Family received actual notice that Hollander intended to try the IWPCL claim by Hollander's actions in addition to filing the Rule 15(a) motion. And procedurally, the Gray court held that the district court did not abuse its discretion in denying a Rule 15(b) motion. Here, although the district court granted a Rule 15(b) motion under somewhat similar circumstances, it did not abuse its discretion. See Rice v. Nova Biomedical Corp., 38 F.3d 909, 918 (7th Cir.1994) ("When an issue is governed by a deferential standard of review, such as abuse of discretion, the implication is that two district judges who reached the opposite result in identical cases might both be affirmed.”).

. At trial, counsel for American Family asked Hollander: “The question in this case and the dispute is about whether or not you should be paid your extended earnings. That’s your counterclaim, isn’t it?” Trial Tr., vol. 2, at 74. Hollander responded: "I believe it is, yes.” Id.

. Here, the parties’ diversity provided an independent basis for subject-matter jurisdiction, relegating ERISA preemption to a waivable defense. Benefits-due actions under ERISA have concurrent state and federal jurisdiction. 29 U.S.C. § 1132(e)(1). Therefore, other circuits have held that preemption questions in benefits-due cases constitute questions of choice of law—not of forum— and thus are waivable defenses. See, e.g., Saks, 316 F.3d at 349; Wolf, 71 F.3d at 448-49. In other actions where ERISA provides exclusive federal jurisdiction, the effect of the preemption question is different. See, e.g., Sales, 316 F.3d at 350; Wolf, 71 F.3d at 449 n. 8. Because this case presents a benefits-due action—with an independent jurisdictional basis of diversity—preemption is a waivable affirmative defense.

. We disagree with the dissent's assertion that by arguing Hollander's IWPCL claims were "almost the same as but slightly different from his existing ERISA remedies,” American Family somehow raised the substance of a preemption issue before the district court. Moreover, if American Family had intended to raise a preemption defense in the district court, we expect the argument would have blossomed into an intelligible and articulate argument at least by the time the case reached our court. Yet there is nothing in American Family’s original or reply brief, or anything American Family’s counsel said during oral argument, which could possibly be construed as a claim that we should reverse because the IWPCL claim is preempted by ERISA. Thus, even if we assumed for argument's sake that this nonjurisdictional defense had been raised in the district court, American Family waived the argument on appeal. See Lockley v. Deere & Co., 933 F.2d 1378, 1386-87 (8th Cir.1991) (noting an argument is abandoned and, therefore, unreviewable if not raised on appeal).