NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3646
_____

UNITED STATES OF AMERICA

v.

BRANDON HINNANT,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 11-cr-00165)
District Judge:  Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit LAR 34.1(a)
June 13, 2013

Before:  SCIRICA, HARDIMAN and ALDISERT, *Circuit Judges*.

(Filed: June 17, 2013)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Brandon Hinnant appeals the District Court's judgment of conviction and

sentence.  We will affirm.

I

At around midnight on February 13, 2011, Philadelphia Police Officers William

Forbes and Anthony Ricci set up surveillance in the 2300 block of Redner Way, an alley

located inside the Norman Blumberg Housing Project in North Philadelphia. Shortly

thereafter, the officers noticed Hinnant and Basile Campbell, approximately forty feet

away. After watching the men for two minutes, the officers observed Hinnant remove a

firearm from his waistband and appear to load it. The officers immediately split up,

approached Hinnant and Campbell from the front and the rear, and apprehended the two

men. Officer Ricci removed a black, loaded revolver from Hinnant's front waistband and

secured it. Officer Forbes then performed a pat down and recovered from Hinnant's

pocket one clear plastic bag containing 73 pink packets of crack cocaine. Hinnant also

possessed $111 and had no drug paraphernalia. Officer Forbes then searched Campbell

but found nothing. During the two minutes that Officers Forbes and Ricci surveilled

Hinnant, they did not observe anyone approach him to purchase drugs.

The officers arrested Hinnant and took him to precinct headquarters, where they

completed paperwork and logged the gun and drugs. Officer Forbes then transported

Hinnant to Central Detectives, where Detective Brian Newell interviewed Hinnant.

Before doing so, Detective Newell gave Hinnant verbal and written *Miranda* warnings,

and Hinnant initialed and signed a written waiver. Hinnant then told Detective Newell

that he had found the gun in a mailbox within a high-rise building in the Blumberg

2

Project. Hinnant also stated that he neither sold any of the drugs nor was a crack user. Finally, Hinnant admitted that he had no permit to carry a firearm. Detective Newell then provided Hinnant with a typed version of his statement, which Hinnant signed.

Hinnant was indicted in the Eastern District of Pennsylvania for possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count I); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count II); and possession of cocaine base with intent to distribute within 1,000 feet of a public housing facility, in violation of 21 U.S.C. § 860 (Count III).

The case against Hinnant was tried to a jury, where Officer Forbes and Detective Newell both testified to the facts described above. In addition, Philadelphia Police Officer Derrick Garner testified as an expert in narcotics and narcotics trafficking. Although Officer Garner was not involved in the Hinnant investigation, he had reviewed the police reports and the seized contraband. He testified that in February 2011, packets like those confiscated from Hinnant sold for $10 each on the streets of Philadelphia. A user, he explained, would never possess so many packets because a user typically can afford to purchase only what he can use immediately. In addition, Officer Garner testified that someone who wanted to purchase a larger quantity of crack to use would buy it in chunk form because it would be much cheaper than buying individual packages. Officer Garner estimated that 2.5 grams of crack—the approximate amount confiscated

3

from Hinnant—would sell in bulk for $125 to $150, whereas a street dealer would charge around $730 for the same quantity. Officer Garner also testified about the tendency of drug dealers to carry firearms, including a gun like the one Hinnant possessed, to protect themselves and their assets. Finally, Officer Garner opined that if he came across someone who possessed 73 individual packets of crack cocaine, a loaded gun, and no drug paraphernalia, he would conclude that the person was a seller, not a user.

Hinnant testified in his own defense, asserting that he found the gun and drugs in a high-rise building in the Blumberg Project. He said that he was a drug user who smoked between five and seven bags of crack per day and that he took the drugs with the intent of using them but did not have the opportunity to do so before he was arrested. Regarding his post-arrest statement, Hinnant testified that he told Detective Newell that he was under the influence of drugs and was a crack user, and alleged that the Detective lied both in his report and at trial when he testified that Hinnant told him otherwise.

The jury found Hinnant guilty on all three counts. Prior to sentencing, the United States Probation Office's Presentence Investigation Report calculated a total offense level of 18 on the drug counts, after adding a two-point enhancement for obstruction of justice pursuant to section 3C1.1 of the United States Sentencing Guidelines (USSG or Guidelines). Hinnant's criminal history category was II, yielding an advisory Guidelines range of 30 to 37 months' imprisonment. Hinnant was also subject to a mandatory consecutive 60-month sentence for the gun count. Accordingly, his final advisory

4

Guidelines range was 90 to 97 months' imprisonment.

At the sentencing hearing, Hinnant objected to the two-level obstruction-of-justice enhancement, asserted that his placement in criminal history category II overstated the seriousness of his criminal record, and contended that, given his age, immaturity, and prospects for rehabilitation, the District Court should vary downward. The District Court rejected these arguments and sentenced Hinnant to 90 months' imprisonment followed by a five-year term of supervised release. This appeal followed.

## II[1]

Hinnant makes three arguments on appeal: (1) that the evidence was insufficient to support his conviction; (2) that the District Court erred by applying an obstruction-of-justice enhancement; and (3) that his sentence was unreasonable. We examine each argument in turn.

## A

At the close of the Government's case, Hinnant made a Rule 29 motion to dismiss the indictment for insufficiency of the evidence. Hinnant now appeals the denial of that motion with respect to his convictions for possession of crack cocaine with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime. We view the evidence in the light most favorable to the Government, and we will sustain the

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010).

1

The evidence was clearly sufficient to support Hinnant's conviction for possession with intent to distribute crack cocaine. Viewed in the light most favorable to the Government, the evidence at trial showed that Hinnant possessed 73 individual packets of crack, no drug paraphernalia indicative of personal use of the crack, and a loaded firearm. He admitted to Detective Newell that he did not smoke crack, the obvious implication being that he intended to sell it. Furthermore, an expert testified that the crack was packaged in a manner typically used for street sales, and the possession of a loaded firearm is consistent with the behavior of a dealer, not a user. These facts are easily sufficient for a reasonable juror to find that Hinnant knowingly possessed the crack cocaine with the intent to distribute it. *See, e.g.*, *United States v. Lacy*, 446 F.3d 448, 454 (3d Cir. 2006) (listing elements of the offense).

Noting that the police did not observe him make a sale, Hinnant argues that he possessed only a small amount of drugs, consistent with personal use. We are not persuaded. The fact that the police did not see him sell drugs is inconsequential, considering that they observed him for only two minutes prior to seizing him. Likewise, a rational juror could easily infer that the crack was not intended for personal use, considering that it was packaged in a manner consistent with distribution. As Officer

6

Garner testified, even if a user were to purchase crack in bulk, he would not purchase it in individually wrapped packets that cost approximately six times what the crack would cost in chunk form.

2

The evidence was also clearly sufficient to support Hinnant's conviction for possession of a firearm in furtherance of a drug trafficking crime. The elements are: (1) the defendant committed the underlying drug trafficking crime; (2) the defendant knowingly possessed a firearm; and (3) the possession was in furtherance of the underlying drug trafficking crime. *United States v. Bobb*, 471 F.3d 491, 496 (3d Cir. 2006).

Hinnant's argument that the evidence did not establish the underlying drug trafficking crime is foreclosed for the reasons we have articulated.

Hinnant also argues that there was insufficient evidence that he intended to use the gun in furtherance of drug distribution. In evaluating this claim, we consider the following nonexclusive factors:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* (quoting *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004)). Most of these factors are present in this case. Despite having no permit to carry a firearm, Hinnant

7

possessed a loaded gun within arm's reach of the drugs, at midnight in a known drug trafficking area. Finally, the narcotics expert explained that street-level dealers often carry the type of weapon possessed by Hinnant to protect themselves and their business. These facts are sufficient for a reasonable juror to find that Hinnant possessed the firearm in furtherance of a drug trafficking crime.

B

Hinnant next challenges the District Court's application of a two-level sentencing enhancement for obstruction of justice because he committed perjury. *See* USSG § 3C1.1 cmt. 4(B) (enhancement applies where the defendant commits, suborns, or attempts to suborn perjury); *see United States v. Dunnigan*, 507 U.S. 87, 98 (1993). To trigger the application of the enhancement, a defendant must give "false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Miller*, 527 F.3d 54, 75 (3d Cir. 2008) (quoting *Dunnigan*, 507 U.S. at 94) (internal quotation marks omitted). We review the District Court's factual finding of willful obstruction of justice for clear error. *United States v. Powell*, 113 F.3d 464, 467 (3d Cir. 1997).

Although Hinnant contends that his testimony was not false, the District Court's finding to the contrary is fully supported by the evidence. After his arrest, Hinnant told Detective Newell that he did not smoke crack and was not under the influence of drugs or alcohol. Furthermore, both Detective Newell and Officer Forbes testified that Hinnant

8

did not appear intoxicated in any way on the night of the arrest. Nevertheless, Hinnant took the stand and testified under oath that he was a crack user who smoked five to seven bags per day and had been doing so since July 2010.

Hinnant also offered a shifting story about how he found the drugs. On direct examination, Hinnant testified that he found the drugs in the high-rise but had not had the chance to smoke them. On cross examination, however, he said that he went into the building to smoke crack and did so alone in a stairwell. Moreover, he testified that, despite his serious addiction to drugs, he did not consider the $111 in his possession to be a lot of money and did not spend any of it on drugs.

The District Court rejected this testimony as incredible, both in its own judgment and as a necessary implication of the jury's verdict. *See United States v. Boggi*, 74 F.3d 470, 478–79 (3d Cir. 1996). Furthermore, it found that the testimony was material because the drug and firearm offenses were predicated on Hinnant's intent to distribute the crack. Finally, it found that Hinnant had a specific intent to testify falsely by "contriv[ing] a story that very conveniently attacked a material element of each of the offenses that [he was] charged with." App. 90. Because these findings are not clearly erroneous, the District Court did not err when it imposed the two-level enhancement for obstruction of justice.

C

Finally, Hinnant argues that his sentence was unreasonable because the District

9

Court failed to adequately consider his age, immaturity, and prospects for rehabilitation. He also argues that the District Court should have reduced his criminal history category from II to I. We review the District Court's sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

We see no reason to disturb Hinnant's sentence. The record confirms that the District Court carefully considered Hinnant's arguments for leniency, including his age, maturity, and criminal past, and determined that these factors did not warrant a downward variance. The Court discussed Hinnant's past as a juvenile offender (including involvement in drug dealing) and noted that his participation in the juvenile system and its rehabilitative programs failed to dissuade him from progressing to similar conduct as an adult. The District Court believed a within-Guidelines sentence was appropriate and we cannot say that this was an abuse of discretion.

## III

For the foregoing reasons, we will affirm the District Court's judgment of conviction and sentence.